**Patrick E. HOSLEY, et al., Respondents,**

v.

**ARMSTRONG CORK COMPANY, et al., Defendants.**

No. C6–84–1209.

Court of Appeals of Minnesota.

March 19, 1985.

Review Granted May 31, 1985.

Richard A. Laverdiere, Hertogs, Fluegel, Sieben Storkamp, Polk & Jones, Hastings, for Patrick E. Hosley, et al.

Craig D. Peterson, Minneapolis, for Armstrong Cork Co.

Richard L. Plagens, Minneapolis, for Eagle-Picher Ind.

Martin N. Burke, Minneapolis, for Owens-Corning Fiberglas Corp.

Richard P. Mahoney, Minneapolis, for Fibreboard Corp.

Jerome B. Pederson, Minneapolis, for Asbestos Corp.

Robert S. Cragg, Minneapolis, for Von Pipe Covering.

Thomas D. Jensen, Minneapolis, for Nicolet Ind., Inc.

Lindsay G. Arthur, Jr., Minneapolis, for Hickory Insulation Co.

Richard T. McHaffie, St. Paul, for Keen Corp.

Robert J. Mabel, Minneapolis, for API.

Jonathan P. Parrington, Minneapolis, for MacArthur Corp.

Richard N. Jeffries, Moorhead, for Celotex Corp.

James R. Gray, Minneapolis, for Forty-Eight Insulations, Inc.

Hubert H. Humphrey, III, Atty. Gen., Richard S. Slowes, Asst. Atty. Gen., St. Paul, John W. Carey, Fairfax, for Minnesota Trial Lawyers Assoc./amicus.

Ellen L. Maas, Minneapolis, for Minnesota Defense Lawyers Assoc./amicus.

Patrick T. Tierney, Collins, Buckley, Sauntry & Haugh, St. Paul, for Pittsburgh Corning Corp.

Considered and decided en banc by POPOVICH, P.J., and FOLEY, SEDGWICK, FORSBERG, LESLIE, NIERENGARTEN and CRIPPEN, JJ.

## OPINION

FOLEY, Judge.

The only non-settling defendant in a multi-defendant products liability case appeals from an order denying its motion for new trial. A judgment required it to pay a portion of the damages attributed by the

jury to a bankrupt defendant severed from the case. Appellant contends that the plaintiff's settlement with some defendants through Pierringer releases destroyed joint liability between the defendants. Alternatively, defendant argues that if it is liable it is entitled to statutory reallocation or common law contribution against the settling defendants, which the plaintiff must satisfy pursuant to the indemnity provisions of the Pierringer releases. We reverse and remand.

## FACTS

Patrick Hosley brought a products liability action against 13 manufacturers of asbestos products to which he was exposed during his 30 years as an insulator. He claimed that exposure to each of the manufacturers' products caused him to contract asbestosis.

Johns-Manville Corp. (Manville) and Unarco Industries, Inc., two of the defendants, filed petitions for reorganization under Chapter 11 of the Bankruptcy Reform Act of 1978. The Hennepin County District Court stayed indefinitely proceedings in cases involving the bankrupts. Hosley moved to lift the stay with regard to the other defendants. Over Pittsburgh Corning Corp.'s (Pittsburgh) objections the trial court severed all claims against Manville and Unarco and all claims asserted by them against third-parties.

Hosley settled with all of the remaining defendants except Pittsburgh through Pierringer releases as approved by *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn.1978). At trial, the judge permitted the jury to consider the fault of all of the parties who contributed to Hosley's injury. The special verdict form instructed the jury to allocate fault between nine parties, including Hosley. The jury awarded Hosley $350,000 and allocated fault as follows:

| | |
|---|---|
| Plaintiff Patrick Hosley | 7% |
| Celotex Corporation | 5% |
| Eagle-Picher Industries, Inc. | 9% |
| Fibreboard Corporation | 15% |
| Forty-Eight Insulation, Inc. | 5% |
| Johns-Manville Sales Corporation | 25% |
| MacArthur Corporation | 9% |
| Owens-Corning Fiberglas Corporation | 15% |
| Pittsburgh Corning Corporation | 10% |
| | 100% |

The trial court reduced the award by $227,500, the percentage of the damages attributable to the fault of the settling defendants and Hosley. The court found that Pittsburgh and Manville were jointly and severally liable for the remaining $122,500. The court entered judgment against Pittsburgh for that amount. However, the court stayed the judgment by $8,166.67, the maximum amount that it calculated could be statutorily reallocated against Hosley should the 25% of the verdict ($87,500) allocated to Manville prove uncollectible.

## ISSUES

1. Does plaintiff's settlement with some defendants through Pierringer releases waive joint liability between all defendants?

2. Should Minn.Stat. § 604.02, subd. 2 (1982), be applied to reallocate a severed bankrupt's equitable share of the judgment?

3. If the reallocation statute is inapplicable, what equitable rights of contribution does the non-settling defendant have?

## ANALYSIS

### I.

■ In general, parties whose negligence concurs to cause an indivisible injury are jointly and severally liable. *Maday v. Yellow Taxi Co.*, 311 N.W.2d 849 (Minn. 1981).

When two or more persons are jointly liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that each is jointly and severally liable for the whole award.

Minn.Stat. § 604.02, subd. 1 (1982).

Pittsburgh urges this court to adopt the North Dakota view that statutory joint liability is for the benefit of the injured party

and is waived by Pierringer settlement with one or more defendants. *Bartels v. City of Williston*, 276 N.W.2d 113, 122 (N.D.1979). The North Dakota rule protects non-settling defendants from the potential prejudice of Pierringer settlement by requiring the plaintiff to bear the full risk of insolvency of defendants. We believe this approach unfairly penalizes plaintiffs and discourages settlements.

Although the Minnesota Supreme Court has not directly ruled on the issue, its language in *Lange v. Schweitzer*, 295 N.W.2d 387 (Minn.1980), convinces us that the court would take a more equitable approach. In *Lange*, the court upheld the right of non-settling defendants paying more than the amount proportionate to their fault to seek contribution from settling defendants. However, the court noted that the indemnity provisions of the Pierringer agreement obligated the plaintiffs, rather than the settling defendants, to satisfy the contribution claims. *Id.* at 390. Since joint liability is a prerequisite for contribution, *Lange* implicitly rejects the notion that use of a Pierringer agreement waives joint liability.

■ In keeping with *Lange*, we find that Pierringer releases do not eliminate joint liability. Their indemnification provisions merely shift to the plaintiff financial responsibility for the settling defendants' liability. This interpretation will encourage settlement and, without requiring plaintiffs to bear the full risk of insolvency, protect non-settling defendants from being forced to pay an unfair share of judgments.

**II.**

■ Since we find that Pittsburgh is jointly and severally liable for the judgment, we must next determine whether the company is entitled to statutory reallocation. The reallocation statute provides:

Upon motion made not later than one year after judgment is entered, the court shall determine whether all or part of a party's equitable share of the obligation is uncollectible from that party and shall reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault. A party whose liability is reallocated is nonetheless subject to contribution and to any continuing liability to the claimant on the judgment.

Minn.Stat. § 604.02, subd. 2 (1982).

If Manville had been a party to the action, once the procedural prerequisites for determining uncollectibility were met, Pittsburgh would have been entitled to statutory reallocation of the $87,500 apportioned to Manville. Hosley would have had to satisfy the reallocation shares of the settling defendants because of his indemnification agreements with them.

However, the statute, by its terms, is limited to reallocation of the uncollectible portion of a *party's* share of the obligation. Since Mansville was formally severed from the proceeding and was not a party to the lawsuit the statute is inapplicable.

■ Pittsburgh's contention that the legislature intended "party" to refer to "parties to the transaction" rather than "parties to the suit" is unpersuasive in light of the distinction which the legislature makes between "persons" and "parties" within the statute. Minn.Stat. § 604.02 has three subdivisions. The first, which deals with joint and several liability, and the third, which deals with reallocation of uncollectible amounts among those in the chain of manufacture and distribution, use the term "person." Only the second subdivision, the one at issue here, uses the term party. Language distinctions must be presumed intentional and must be given effect. *Transport Leasing Corp. v. State*, 294 Minn. 134, 199 N.W.2d 817 (1972).

**III.**

■ Finally, we must determine what common law contribution rights Pittsburgh has against Manville, Hosley and the settling defendants. There are two prerequisites for contribution in Minnesota. First, the co-tortfeasors must be under a common liability to the injured party. Second, the

co-tortfeasor claiming contribution must have paid a disproportionate share of the judgment. *Jones v. Fisher,* 309 N.W.2d 726, 728 (Minn.1981) (quoting from Note, *Contribution & Indemnity—An Examination of the Upheaval in Minnesota Tort Loss Allocation Concepts,* 5 Wm. Mitchell L.Rev. 109, 125 (1979)).

■ Pittsburgh only has contribution claims against Manville and the settling defendants more-at-fault than Hosley because those are the only co-tortfeasors with whom Pittsburgh has common liability. Under Minnesota's comparative fault system, defendants less-at-fault than the plaintiff are not liable to the plaintiff. Therefore they have no common liability with defendants more-at-fault than plaintiff, and are not subject to contribution claims. *Horton v. Orbeth,* 342 N.W.2d 112, 114 (Minn.1984).

The dissenters, citing *Jack Frost, Inc. v. Engineered Building Components Co. Inc.,* 304 N.W.2d 346 (Minn.1981), argue that public policy requires that contribution be limited whenever it would result in reduction of a plaintiff's recovery. They contend that Pittsburgh should be limited to seeking contribution from Manville because the practical effect of allowing contribution against the settling defendants would be to reduce Hosley's recovery. The dissenters' approach would burden Pittsburgh with the full risk of recovering from Manville if and when the bankruptcy stay is lifted.

We read *Frost* as a confirmation of the rule that defendants less-at-fault than plaintiffs are not subject to contribution claims, rather than as a general limitation on contribution. The case did not deal with Pierringer releases. It was a product liability action in which the plaintiff and two defendants were found at fault. Because one defendant was less at fault than the plaintiff, the Minnesota Supreme Court held the other defendant liable for all those damages attributable to both defendants. The one defendant was forced to pay the entire judgment, less that portion attributable to the plaintiff, not because contribution would reduce the plaintiff's recovery, but because there was no one from whom the defendant could seek contribution.

■ In this case there are numerous settling defendants from whom Pittsburgh could seek contribution for the 25% of the verdict allocated to Manville. It would be inequitable to deny the company contribution against the settling defendants more-at-fault than Hosley merely because Hosley would ultimately pay the contribution claims. That is precisely what Hosley contracted to do. It is an expected consequence of the Pierringer settlements. *See Lange.*

Furthermore, the problem arises because Hosley elected, over the objections of Pittsburgh, to sever Manville and proceed against the other defendants. A plaintiff has the right to control his own lawsuit. But, if he elects piecemeal litigation he should bear the risk created by that approach. *Hart v. Cessna Aircraft Co.,* 276 N.W.2d 166, 169 (Minn.1979). Therefore, it is appropriate to require Hosley to stand in the shoes of the settling defendants with respect to Pittsburgh's contribution claims.

Eventually whoever pays the 25% of the verdict apportioned by the jury to Manville may be able to recover that amount from Manville. However, the bankruptcy stay places claims against Manville in indefinite limbo. So we are faced with the equitable dilemma of allocating through contribution the risk of recovering from Manville.

Because equitable contribution is a flexible concept there is no standard rule or formula to be universally applied. Relief is to be fashioned in light of the equitable dilemma presented. We believe the fairest and most equitable approach in this case would be to divide the $87,500 at issue between Pittsburgh and the settling defendants· more-at-fault than Hosley in proportion to their fault. This would result in Pittsburgh paying 10/58 ($15,086.21) of the figure. Hosley's judgment would be reduced by the remaining 48/58 ($72,413.79) because of his indemnification agreements with the settling defendants.

This formula requires Hosley to accept the risks created by piecemeal litigation, and protects Pittsburgh from having to pay more than its fair share of the outstanding $87,500. It applies the equitable principle that emanates from *Hart*, while conceding that the factual situations of the cases are different. Pittsburgh is also liable for its 10% share of the verdict returned by the jury.

## DECISION

We reverse and remand with instructions to enter judgment in favor of Hosley against Pittsburgh for the sum of $50,-086.21, reserving to Hosley and Pittsburgh cross claims against Manville.

Reversed and remanded.

POPOVICH, C.J., and NIERENGAR-TEN, J., concur in part and dissent in part.

CRIPPEN, J., dissents.

NIERENGARTEN, Judge (concurring in part, dissenting in part).

I respectfully concur in part and dissent in part.

I agree with the majority that the joint and several liability between Pittsburgh and Manville has not been destroyed. In *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn. 1978), the supreme court stated:

> By the terms of this type of release the nonsettling defendant will never be required to pay more than his fair share as determined by the jury's finding of comparative negligence.

*Id.* at 921; *see also Bartels v. City of Williston*, 276 N.W.2d 113, 122 (N.D.1979). The court in *Frey*, as well as in *Bartels*, held that a plaintiff waived the statutory provision for joint liability by entering into a Pierringer type release. Both cases, however, only involved one nonsettling defendant; there are two such defendants in the present case.

Both courts were concerned with the situation where a nonsettling defendant would be liable for the percentages of fault attributed to the settling defendants. To prevent this potential abuse, the courts held that a plaintiff could not recover the entire judgment based on the joint and several liability between the cotortfeasors, thereby precluding the plaintiff from holding the nonsettlors jointly liable for the liability attributed to the settling defendants. In this sense, the nonsettlors are only severally liable to the plaintiff. In other words, a plaintiff was precluded from receiving a double recovery by not requiring a nonsettling defendant to pay a portion of the judgment which had already been satisfied. Accordingly, joint liability was severed only between the settling and nonsettling defendants. The *Frey* court made this clear when it stated: "Since the nonsettling defendant is relieved from paying more than his fair share of the verdict, the other defendants may properly be dismissed from further participation in the trial." *Frey*, 269 N.W.2d at 922; *see also* Uniform Comparative Fault Act, § 6 illustration 11 12 U.L.A. 49 (Supp.1985); Steenson, "Comparative Fault and Loss Reallocation" vol. 6, no. 5 *Minnesota Trial Lawyers*, 27 (1981).

I also agree that the reallocation provision of Minn.Stat. § 604.02, subd. 2 (1982) does not apply to this case. Manville was not a party to the present action. Reallocation applies only when "all or part of a *party's* equitable share of the obligation is uncollectible from that *party* * * *.*" Minn.Stat. § 604.02, subd. 2 (1982) (emphasis added).

I respectfully dissent from that portion of the majority's opinion which applies equitable contribution principles. Where one tortfeasor has paid more than his share of the judgment, there exists a right to contribution from the other tortfeasors. *Lange v. Schweitzer*, 295 N.W.2d 387, 390 (Minn. 1980). In some situations, however, it is possible under our comparative fault statute that a defendant may be liable for a cotortfeasor's percentage of fault in addition to their own. In *Jack Frost v. Engineered Building Components*, 304 N.W.2d 346 (Minn.1981), one defendant was more negligent than the plaintiff while the other

defendant was less negligent than the plaintiff. Even though the less negligent defendant wasn't liable to the plaintiff, the supreme court held that the more negligent defendant was liable for the entire amount of the plaintiff's damages reduced only by the percentage of negligence attributed to the plaintiff.

Although the trial court's result may not seem fair, Pittsburgh does retain contribution rights against Johns-Manville which it may pursue in whatever fashion Pittsburgh deems appropriate.

POPOVICH, Chief Judge, concurring in part, dissenting in part.

I concur with the view of Judge Nierengarten.

CRIPPEN, Judge, dissenting.

I respectfully dissent.

### 1.

I believe the joint liability issue is the fundamental question on appeal, and I agree with the conclusion of the majority on this topic. Pittsburgh Corning Corp. and Johns-Manville Corp. are jointly liable tortfeasors, and that liability is not altered by respondent's Pierringer releases to other defendants. Commentators on comparative fault law agree with the conclusion.[1]

Further, as the majority decides, Johns-Manville Corp. is not a party to this litigation and it is inappropriate to reallocate its obligation under Minn.Stat. § 604.02, subd. 2 (1984). Nor do I believe that the issue of an "uncollectible" obligation has arisen in the case.[2]

We should not go further. It is premature to decide questions of statutory reallocation of fault, and it is no less premature to decide contribution claims of Pittsburgh Corning Corp. Those issues will properly arise in litigation where Johns-Manville Corp. is a party, and after it is known to what extent its liability exists and to what extent its obligations can be enforced.

Except on a decision to stay a small part of respondent's judgment (footnote 2), I would affirm the trial court decision.

### 2.

Additionally, I am not convinced on the merits of conclusions of the majority that joint liability of Pittsburgh Corning Corp. is cast upon the settling defendants and ultimately upon respondent Hosley, either on theories of reallocation or contribution.

Recognition of joint liability governs the legal relationships among tortfeasors. Also, the liability favors a plaintiff such that he can recover from one tortfeasor for fault attributable to another. Identification of joint liability is recognition of an equity of the injured party that is superior to equities of any tortfeasor.

Thus, in *Jack Frost, Inc. v. Engineered Bldg. Components, Co., Inc.*, 304 N.W.2d 346 (Minn.1981), the plaintiff, 30 percent at fault, was permitted to recover 70 percent of its damages from defendant Hydro-Air, which was 55 percent at fault. Hydro-Air was liable for 15 percent of damages attributed to defendant Engineered Building Components (EBCO), even though EBCO, because its fault was less than plaintiff's, was not directly liable to plaintiff under Minnesota's modified comparative fault law. Minn.Stat. § 604.01, subd. 1 (1984). The supreme court said in *Jack Frost:*

> The extent of Hydro-Air's liability is not affected by the fact that only 55% of the causal negligence was attributed to Hydro-Air. Jack Frost suffered an indivisible injury as a result of its own negligence and that of EBCO and Hydro-Air. Hydro-Air is therefore liable for the en-

---

1. Steenson, *Comparative Fault and Loss Reallocation,* Minnesota Trial Lawyers, vol. 6, no. 5 (hereafter Steenson), page 27, Illustration Five (1984); Comments to *Uniform Comparative Fault Act,* § 6, Illustration 11 (1977).

2. The trial court decided to stay enforcement of the part ($87,500) of Hosley's judgment against Pittsburgh Corning that constitutes the obliga-

tion of Johns-Manville, "to the extent of the maximum amount which could possibly be assessed against plaintiff Patrick Hosley for reallocation pursuant to (§ 604.02, subd. 2)." The court stayed 7/15ths of $87,500, representing Hosley's percentage of fault. This decision of the trial court was premature.

tire amount of Jack Frost's damages diminished, as section 604.01, subd. 1, requires, by 30%, the proportion of causal negligence attributed to Jack Frost.

*Id.* at 352.

This court agrees that Pittsburgh Corning and Johns-Manville are jointly liable tortfeasors. Respondent learns, however, that benefits under the law are sometimes too slippery to hold. Here the majority reconsiders the equities before a moment passes, and respondent's superior equity gives way to concern for the plight of the tortfeasor.[3]

The jury attributed $87,500 damages of respondent to Johns-Manville Corp. Pittsburgh Corning is jointly liable for those damages, but the majority view erases $72,413.79 of respondent's recovery from Pittsburgh. Respondent, 7 percent at fault, recovers $50,086.21 of $122,500 damages attributed to non-settling defendants.

The issue involves an unresolved conflict of major legal concepts. As against non-settling defendants, the plaintiff expects recovery of his damages "diminished" only "in proportion to the amount of fault attributable" to the plaintiff himself. Minn. Stat. § 604.01, subd. 1 (1984). On the other hand, a non-settling defendant normally "will never pay more than his share, because [under the comparative fault statute] his exposure is limited to his own percentage of causal negligence—exactly his share—attributed to him at trial." Simonett, *Release of Joint Tortfeasors: Use of the Pierringer Release in Minnesota,* 3 Wm. Mitchell L.Rev. 1, 18 (1977). *See Frey v. Snelgrove,* 269 N.W.2d 918, 921 (Minn. 1978). These authorities show resolution of the conflicting interests in direct allocation of fault, but they do not address the situation of multiple non-settling defendants and the handling of joint liability of one for the others.

Unless and until a different rule of law is announced by the supreme court or the legislature, I would reject the elusive posture toward joint liability chosen by the majority. Rather, I would turn to existing authority on the resolution of similar equities, the decision in *Jack Frost,* 304 N.W.2d 346.

The *Jack Frost* result was costly to the obligated defendant (Hydro-Air). Although held responsible for fault of another defendant, Hydro-Air had no right to recover contribution from that party. *Horton v. Orbeth, Inc.,* 342 N.W.2d 112, 114 (Minn. 1984). Similarly, Pittsburgh Corning is a jointly liable tortfeasor that should bear the risks in seeking a judgment against Johns-Manville and collecting on that judgment.

Finally, the majority concludes that Hosley's equities are defeated because of his support for severing Johns-Manville from the case. I disagree.

In *Hart v. Cessna Aircraft Company,* 276 N.W.2d 166 (Minn.1979), the supreme court held that a defendant must be relieved of the unjust burden to cover the liability of another tortfeasor, a pilot, who was not a party in the lawsuit. The pilot could not be sued for contribution because Hart had previously sued that party and the pilot was found not negligent. Because Cessna, the defendant in the second case, was not heard in the first suit, the supreme court concluded its liability for the pilot's fault would be unjust and would probably be unconstitutional.

Here Pittsburgh Corning can sue Johns-Manville for contribution and can be heard in that suit. Further, its peril is not the result of a piecemeal strategy unilaterally chosen by the plaintiff. Without severing Johns-Manville, respondent had to indefinitely surrender his right for recovery, perhaps for many years. Moreover, the decision to sever was approved by the trial court.

### 3.

The trial court correctly adjudicated the joint liability of non-settling tortfeasors. I

---

**3.** The position of the majority is supported by commentators on statutory reallocation. The plaintiff's risk of losing the part of an uncollectible obligation attributed to settling defendants is endorsed by Steenson and in Uniform Comparative Fault Act comments. *See* footnote 1.

dispute reversal of that decision in this litigation, and I question the rationale for reversal announced by the majority.