Greg HOERR, Plaintiff and Appellee,

v.

NORTHFIELD FOUNDRY AND MA-
CHINE COMPANY and Country
Hill Cabinets, Defendants,

G.C. Peterson Company, Inc.,
Defendant and Appellant.

Civ. No. 10872.

Supreme Court of North Dakota.

Oct. 28, 1985.

Gjevre, McLarnan, Hannaher, Vaa, Skatvold & McLarnan, Moorhead, Minn., for plaintiff and appellee; argued by Galen Vaa.

Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, Minn., for defendant and appellant; argued by Paul E. Grinnell.

GIERKE, Justice.

Defendant G.C. Peterson Company, Inc. [Peterson], appeals from an "amended order"[1] of the District Court of Cass County

---

1. Hoerr asserts that Peterson's appeal should be dismissed because it has appealed from an order for judgment, which is interlocutory and nonappealable. *E.g., Jensen v. Zuern,* 336 N.W.2d 330, 331 (N.D.1983). We disagree.

After the jury returned its verdict, the district court entered an order for judgment on October 4, 1984. Judgment was entered pursuant to this order on October 9, 1984. Following entry of the judgment, Peterson filed a motion for relief from the district court's order of October 4, 1984. On October 19, 1984, the district court entered an order amending the previous order pursuant to Peterson's request. The district court stated:

awarding plaintiff Greg Hoerr damages in the amount of $47,266.88, plus costs and disbursements. We affirm.

On August 20, 1982, Hoerr suffered a work-related injury when a high-speed wood shaper he was operating severed parts of three fingers from his left hand. At the time of the injury, Hoerr was employed as a cabinetmaker by Custom Fabricators, Inc. [Custom], in Fargo. Hoerr received workmen's compensation benefits.

The wood shaper was manufactured by Northfield Foundry and Machine Company [Northfield]. Peterson, the distributor of the wood shaper, initially sold the machine to Country Hill Cabinets [Country], which in turn resold the machine to Hoerr's employer, Custom.

In February 1983, Hoerr commenced this products liability action against Northfield, Peterson, and Country based on theories of negligence, strict liability in tort, and breach of express and implied warranties. Hoerr later voluntarily dismissed his claim for breach of express and implied warranties. The complaint alleged that the defendants "negligently designed, fabricated, constructed, manufactured, inspected and sold" the wood shaper and that the defendants "manufactured, designed, fabricated, constructed, inspected and sold" the wood shaper "in a defective condition, unreasonably dangerous to users and consumers."

Prior to trial, Hoerr entered into *Pierringer* or *Bartels* releases[2] with defendants Northfield and Country, from whom Hoerr received $10,000 and $20,000, respectively. Peterson proceeded to trial as the sole remaining defendant and asserted as defenses Hoerr's negligence, assumption of

risk, and unforeseeable misuse of the wood shaper. A special verdict form was submitted to the jury which contained two separate fault assessments with regard to all parties, including the employer and settling defendants. The jury found that Hoerr was entitled to recovery under both the negligence and strict liability theories and returned the following verdict:

"17. When considering strict liability, taking the combined concurring causes (the defective and unreasonably dangerous product and misuse and/or assumption of risk) of all the parties at 100%, what percentage or proportion do you attribute to the following parties:

| | | |
|---|---|---|
| A. | Northfield Foundry & Machine Co. | 65% |
| B. | G.C. Peterson Company | 25% |
| C. | Plaintiff Greg Hoerr (misuse and/or assumption or (sic) risk) | 0% |
| D. | Country Hill Cabinets | 10% |
| E. | Custom Fabricators | 0% · |
| | TOTAL: | 100% |

"18. Taking the combined negligence of all the parties at 100%, what percentage or proportion do you attribute to the following parties:

| | | |
|---|---|---|
| A. | Northfield Foundry & Machine Co. | 10% |
| B. | G.C. Peterson Company | 45% |
| C. | Plaintiff Greg Hoerr | 0% |
| D. | Country Hill Cabinets | 22.5% |
| E. | Custom Fabricators | 22.5% |
| | TOTAL | 100% |

"19. We find that Palintiff's (sic) damages, if any, are in the amount of $70,025.00"

After the verdict was entered, Hoerr filed a motion pursuant to Rule 58, N.D.R. Civ.P., requesting an order granting judg-

"Further, should it be necessary to make any change in the judgment as entered, and it does not appear that there will have to be, then that is to be made within 48 hours by counsel for the Plaintiff, ..."

An "amended order" incorporating the changes was entered on October 19, 1984. Peterson's notice of appeal states in part that it "appeals from the Trial Court's amended Order dated October 19, 1984, entering judgment against G.C. Peterson Company, Inc. ..."

We conclude that under these unique circumstances the district court contemplated that its

"amended order" was the final document and that it did not intend the term "amended order" to mean an "order for judgment." *Cf. State v. Grant*, 361 N.W.2d 243 n. 1 (N.D.1985); *Eisenzimmer v. City of Balfour*, 352 N.W.2d 628, 629 (N.D.1984). Accordingly, we have jurisdiction to consider this appeal.

2. *See Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963), and *Bartels v. City of Williston*, 276 N.W.2d 113 (N.D.1979).

ment against Peterson on the negligence verdict alone, for 67.5 percent of the total damages, or $47,266.88. In response, Peterson filed a "Brief on Entry of Judgment" contending that: (1) judgment should be entered on the strict liability fault assessment; (2) the case should be retried with a combined fault assessment verdict form; (3) judgment should be entered on an average of the two fault assessments rendered by the jury; and (4) judgment should be entered with Peterson "picking up only a pro rata share of the fault assigned to the employer, with the other parties who were found at fault picking up a pro rata share of the employer's negligence in proportion to their fault." The district court rejected Peterson's contentions and entered judgment against Peterson in the amount of $47,266.88, representing 67.5 percent of the total damages. This appeal followed.

## I

Peterson first asserts that the jury's verdict is "perverse" because the jury failed to assess any fault on the part of Hoerr under either the strict liability or negligence theories. Peterson claims that the evidence justifies findings that Hoerr was negligent, assumed the risk, and unforeseeably misused the wood shaper.

We need not dwell at length on this contention. This court's review of questions of fact is limited to consideration of whether or not there is substantial evidence to sustain the jury's verdict. *E.g., Farmers Co-op. Elevator of Cavalier v. Lemier,* 328 N.W.2d 833, 835 (N.D.1982). In determining whether or not there is substantial evidence to sustain the verdict, we will not invade the province of the jury to weigh the evidence or to determine the credibility of witnesses. *E.g., Powers v. Martinson,* 313 N.W.2d 720, 728 (N.D. 1981). In reviewing the evidence, we view it in the light most favorable to the verdict. *E.g., Johnson v. Northwestern Bell Telephone Co.,* 338 N.W.2d 622, 625 (N.D.1983).

■ Peterson directs our attention to testimony in the record that would certain-

ly support findings that Hoerr was either negligent, or had assumed the risk or unforeseeably misused the wood shaper. Hoerr directs our attention to testimony in the record that clearly supports the jury's contrary findings. Under these circumstances, we will not substitute our judgment for that of the jury, which heard the testimony and had the opportunity to judge the credibility of the witnesses. We conclude that there is substantial evidence to support the jury's findings that Hoerr was not negligent, did not assume the risk, and did not unforeseeably misuse the wood shaper.

## II

Peterson asserts that the evidence is insufficient to support the jury's $70,025 damage award.

In *Vallejo v. Jamestown College,* 244 N.W.2d 753, 759 (N.D.1976), this court stated:

"There is no certain or definite rule by which the amount of damages can be measured, and each case must be determined on its merits. This determination is in the province of the jury and the matter of damages rests largely in the sound discretion of the jury.

... Before this court will interfere with the verdict on appeal, it must be so excessive or so inadequate as to be without support in the evidence...." [Citations omitted.]

■ In the present case, the treating physician testified that Hoerr's injury resulted in a 32½ percent permanent partial impairment of his left hand which correlated to approximately 30 percent permanent impairment of his entire left arm. The doctor also testified that in his opinion Hoerr would be unable to satisfactorily perform his former duties as a carpenter or cabinetmaker because of the loss of the ability to "manipulate small parts, nails or screws or anything that required dexterity with any degree of skill...." A rehabilitation psychologist who evaluated Hoerr testified that Hoerr suffered from depression

for approximately 18 months after the accident and that he had acquired an "anxiety relating to operation around power machinery." The rehabilitation psychologist also testified that a reasonable retraining program at a vocational technical institute would cost between $5,000 and $6,000.[3] Hoerr testified that he continues to suffer from pain and discomfort in his left hand when it is exposed to cold weather or bumped against objects. Hoerr also testified that he has undergone three surgical procedures for treatment of his injury.

Having reviewed the record, we cannot say that the amount of damages awarded by the jury is unsupported by the evidence or that it is excessive.

### III

Peterson asserts that the trial court erred in submitting to the jury separate fault assessments under Hoerr's negligence and strict liability theories of recovery. Peterson requests that we remand this case for a new trial with a combined fault assessment special verdict form, a copy of which counsel has offered as an exhibit in this court. In the alternative, Peterson suggests that Hoerr should have been required to elect his theory of recovery before submission of the case to the jury. *See Hauenstein v. Loctite Corp.*, 347 N.W.2d 272 (Minn.1984).

This court has consistently held that a question not raised or considered in the trial court cannot be raised for the first time on appeal. *E.g., Family Center Drug Store, Inc. v. North Dakota State Board of Pharmacy*, 181 N.W.2d 738, 745 (N.D. 1970). We have also held that where no objection to a special verdict form was made, the jury's finding upon the special verdict is binding. *Andersen v. Teamsters*

*Local 116 Bldg. Club*, 347 N.W.2d 309, 313 (N.D.1984); *Farmers Union Grain Terminal Ass'n v. Nelson*, 223 N.W.2d 494, 499 (N.D.1974).

The record in this case establishes not only that Peterson failed to object to the special verdict form, but that it agreed to the contents prior to its submission to the jury. The record also reflects that Peterson made no request that Hoerr elect between his theories of recovery prior to submission of the case to the jury. We therefore conclude that the special verdict form is binding on the parties to this appeal, and leave to another day consideration of whether or not pre-submission election between theories of recovery, combined fault assessment forms, or separate fault assessment forms (as used in this case), is proper.

While we do not decide that the special verdict form used in this case is proper, it is nevertheless necessary to determine whether or not the trial court erred in allowing Hoerr to choose to have judgment entered on the negligence fault assessment.

The jury found Peterson liable under two alternative theories of recovery. *See generally Mauch v. Manufacturers Sales & Service, Inc.*, 345 N.W.2d 338, 345 (N.D. 1984) ["recovery sought under a negligent failure-to-warn theory and recovery sought under a products-liability theory of marketing a product which is defective and unreasonably dangerous because it is not accompanied by adequate warnings are two separate and distinct theories of recovery"]. Peterson contends that Hoerr should not be allowed to choose to have judgment entered on the theory which affords him the greater amount of recovery, *i.e.*, negli-

---

**3.** Peterson contends that under this court's decision in *Holecek v. Janke*, 171 N.W.2d 94 (N.D. 1969), the district court committed prejudicial error in allowing the rehabilitation psychologist to testify as to the specific costs of retraining because Hoerr did not establish that he actually intended to enroll in such training. In *Holecek, supra*, 171 N.W.2d at 101, this court held that the admission of estimated hospital costs and surgical fees for a possible future surgery was prejudicial error where the plaintiff failed to establish "with reasonable medical certainty or probability that future surgery was necessary...." In the present case, Hoerr has established that, in order for him to regain his former earning capacity, a retraining program was reasonable and *necessary* because he was disabled from performing his prior duties as a carpenter and cabinetmaker. *Holecek* is therefore inapposite to the situation in this case.

gence, and asserts that under the circumstances of this case the "fairest compromise" would be to average the strict liability and negligence fault assessments. Peterson has provided us with no authority for this approach and has failed to persuade us that averaging the two fault assessments would constitute the "fairest compromise."

■ We agree with the following rationale of the New Jersey Supreme Court in *Cartel Capital Corp. v. Fireco of New Jersey*, 81 N.J. 548, 564–565, 410 A.2d 674, 682–683 (1980):

"We perceive of no reason to disavow th[e strict liability] verdict merely because the plaintiff was also found entitled to recover due to Fireco's negligence. Where a defendant is found liable on the theory of strict liability, plaintiff's entitlement to recovery should not be diminished or altered because defendant is also liable on another theory of wrongdoing.... 'When a jury verdict sustains several alternative theories of recovery advanced by a plaintiff, the trial court must [unless plaintiff chooses otherwise] render judgment on the theory which affords the greatest recovery.' *Mowery v. Fantastic Homes, Inc.*, 568 S.W.2d 171, 173 (Tex.Civ.App.1978)."

■ We conclude that, under the circumstances of this case, the district court did not err in granting Hoerr's request to have judgment entered on the negligence fault assessment.

## IV

Peterson asserts that the district court erred in holding it, as the sole remaining defendant, liable for the entire percentage of causal fault of Hoerr's employer, Custom. This presents a question of first impression in this jurisdiction which requires us to examine the interrelationship of principles enunciated in *Layman v. Braunschweigische Maschinenbauanstalt (Layman I)*, 343 N.W.2d 334 (N.D.1983), and *Bartels v. City of Williston*, 276 N.W.2d 113 (N.D.1979).

A brief restatement of the relevant facts is helpful at this point. Plaintiff Hoerr was found by the jury to be 0 percent at fault under the negligence fault assessment. Northfield and Country, which were technically no longer defendants in the suit because of their settlements with Hoerr, were found by the jury to be 10 percent and 22.5 percent at fault, respectively. Custom, which was statutorily immune from suit by virtue of the exclusive remedy provisions of the Workmen's Compensation Act, was found to be 22.5 percent at fault. The sole remaining nonsettling tort-feasor, Peterson, was found to be 45 percent at fault. The trial court entered judgment against Peterson for $47,266.88, representing 67.5 percent of the causal fault, or the combined total of fault assessed against the nonsettling tort-feasor and the statutorily immune employer.

In *Bartels*, this court held that the joint and several liability provisions of our comparative negligence statute, § 9–10–07, N.D.C.C., are for the benefit of the injured party and may be waived. We further held that by entering into a general release the plaintiff has waived the joint and several liability provisions of § 9–10–07, N.D.C.C., and that the plaintiff's recovery from the nonsettling tort-feasors is therefore "limited to the percentage of negligence attributable to the remaining nonsettling tort-feasors as may be determined by the court or the jury, ..." *Bartels, supra*, 276 N.W.2d at 122.

In *Layman I, supra*, 343 N.W.2d at 350, we determined that the *Bartels* theory of waiver does not apply "so as to eliminate the concept of joint and several liability in a case involving a negligent third-party tort-feasor and an employer immune from suit...." We therefore held that the third-party tort-feasor in *Layman I* could be held jointly and severally liable for the percentage of negligence attributable to the statutorily immune employer.

The fact situation in *Bartels* did not include a statutorily immune employer. The fact situation in *Layman I* did not include settling tort-feasors. The instant case pro-

vides us with both. The threshold issue thus becomes whether or not Hoerr's *Bartels* settlements with Northfield and Country destroyed the concept of joint and several liability with regard to all parties and defendants, thereby precluding application of *Layman I* in this case.

An en banc Minnesota Court of Appeals has recently addressed an analogous issue. In *Hosley v. Armstrong Cork Co.*, 364 N.W.2d 813 (Minn.App.1985), the appellant, the only nonsettling defendant in a multiple-defendant products liability action, claimed that it should not be required to pay a portion of the damages attributed by the jury to a bankrupt defendant that had been severed from the case. The majority of the court held that *Pierringer* releases do not waive joint liability between all defendants, but that their "indemnification provisions merely shift to the plaintiff financial responsibility for the settling defendants' liability." *Hosley, supra,* 364 N.W.2d at 816.

In reaching its decision, the majority rejected the appellant's argument that it should adopt "the North Dakota view" enunciated in *Bartels* that statutory joint liability is waived by *Pierringer* settlement with one or more defendants. *Hosley, supra,* 364 N.W.2d at 815–816. Apparently agreeing that *Bartels* definitively settled the question whether or not the waiver extends to situations in which more than one nonsettling defendant remains in the lawsuit, the majority stated:

> "The North Dakota rule protects nonsettling defendants from the potential prejudice of Pierringer settlement by requiring the plaintiff to bear the full risk of insolvency of defendants. We believe this approach unfairly penalizes plaintiffs and discourages settlements." *Hosley, supra,* 364 N.W.2d at 816.

We disagree with the *Hosley* majority's interpretation of the application of *Bartels* under this set of circumstances. Rather, we agree with Judge Nierengarten's well-reasoned interpretation of *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn.1978), a Minnesota case cited by our court in *Bartels:*

> "I agree with the majority that the joint and several liability between Pittsburgh [appellant] and Manville [bankrupt] has not been destroyed. In *Frey v. Snelgrove*, 269 N.W.2d 918 (Minn.1978), the supreme court stated:
>
> > By the terms of this type of release the nonsettling defendant will never be required to pay more than his fair share as determined by the jury's finding of comparative negligence.
>
> "*Id.* at 921; *see also Bartels v. City of Williston*, 276 N.W.2d 113, 122 (N.D. 1979). The court in *Frey*, as well as in *Bartels*, held that a plaintiff waived the statutory provision for joint liability by entering into a Pierringer type release. Both cases, however, only involved one nonsettling defendant; there are two such defendants in the present case.
>
> "Both courts were concerned with the situation where a nonsettling defendant would be liable for the percentages of fault attributed to the settling defendants. To prevent this potential abuse, the courts held that a plaintiff could not recover the entire judgment based on the joint and several liability between the cotortfeasors, thereby precluding the plaintiff from holding the nonsettlors jointly liable for the liability attributed to the settling defendants. In this sense, the nonsettlors are only severally liable to the plaintiff. In other words, a plaintiff was precluded from receiving a double recovery by not requiring a nonsettling defendant to pay a portion of the judgment which had already been satisfied. Accordingly, joint liability was severed only between the settling and nonsettling defendants. The *Frey* court made this clear when it stated: 'Since the nonsettling defendant is relieved from paying more than his fair share of the verdict, the other defendants may properly be dismissed from further participation in the trial.' *Frey*, 269 N.W.2d at 922; *see also* Uniform Comparative Fault Act, § 6 illustration 11 12 U.L.A. 49 (Supp.1985); Steenson, 'Comparative Fault and Loss Reallocation' vol. 6, no. 5

*Minnesota Trial Lawyers,* 27 (1981)." *Hosley, supra,* 364 N.W.2d at 818 (Niergengarten, J., and Popovich, C.J., concurring in part, dissenting in part).[4]

In *Bartels, supra,* 276 N.W.2d at 123, we cautioned that the opinion should not be read too broadly and that "a different set of facts conceivably could produce different answers." We conclude that by entering into a *Bartels* release, the plaintiff waives joint and several liability only between the settling and nonsettling defendants, and that the nonsettling defendants may be held jointly and severally liable for the entire portion of causal fault reduced only by that portion of fault attributable to the settling defendants.

Peterson contends that Custom's causal fault should be distributed among all causal parties in percentages based on their own causal fault because this would produce "the equitably correct result."[5]

The majority of the court in *Hosley, supra,* appears to have adopted, as a matter of equity, an approach similar to that advanced by Peterson in this case. In *Hosley,* the sole remaining nonsettling defendant was found to be 10 percent at fault, the bankrupt defendant was found to be 25 percent at fault, and the plaintiff was found to be 7 percent at fault. The combined fault of the settling defendants who were found to be more at fault than the plaintiff totaled 48 percent. The jury awarded the plaintiff damages in the amount of $350,000. The trial court reduced the award by the percentage of damages attributable to the plaintiff and settling defendants, found the nonsettling defendant and bankrupt defendant jointly and severally liable for the remaining $122,500, and entered judgment against the nonsettling defendant for that amount.

Applying a theory of equitable common law contribution, the majority stated:

"Eventually whoever pays the 25% of the verdict apportioned by the jury to Manville [bankrupt] may be able to recover that amount from Manville. However, the bankruptcy stay places claims against Manville in indefinite limbo. So we are faced with the equitable dilemma of allocating through contribution the risk of recovering from Manville.

"Because equitable contribution is a flexible concept there is no standard rule or formula to be universally applied. Relief is to be fashioned in light of the equitable dilemma presented. We be-

---

4. Three separate opinions were filed by the Minnesota Court of Appeals in *Hosley.* Although the two concurring and dissenting opinions disagreed with the majority's resolution of another issue presented in the case, all of the judges of the en banc court agreed that the *Pierringer* settlements did not destroy joint liability between the appellant and bankrupt defendant. We note that on May 31, 1985, the Minnesota Supreme Court agreed to review the *Hosley* decision.

Judge Nierengarten, in his concurring and dissenting opinion in *Hosley,* quoted statements from *Frey* to the effect that, by the terms of a *Pierringer* release, the nonsettling defendant will never be required to pay more than his "fair share."

We are fully aware of the difference between North Dakota law and Minnesota law when a statutorily immune employer is involved. Under Minnesota law, a third-party tort-feasor sued by an employee can maintain an action for contribution against the employer for an amount proportional to its percentage of negligence, but not exceeding its total workmen's compensation liability to the employee. *See*

*Lambertson v. Cincinnati Corp.,* 312 Minn. 114, 257 N.W.2d 679 (1977). However, under our law, the Workmen's Compensation Act operates to foreclose an employer's liability for contribution to a third-party tort-feasor. *See Layman I, supra; Gernand v. Ost Services, Inc.,* 298 N.W.2d 500 (N.D.1980). Thus, under our law as it has developed, we are unable to say that a nonsettling defendant will never be required to pay more than his "fair share" in a situation where a statutorily immune employer is also found to be at fault because in *Layman I* we chose to place the inequity inherent in cases involving a statutorily immune employer on the third-party tort-feasor rather than the injured employee.

5. Peterson also argues that Country should be liable for the entire percentage of Custom's negligence because, like BMA in *Layman I,* Country's personnel had a "supervisory role" in the operation of Custom. Our holding in *Layman I* that BMA was liable for the negligence of the employer was premised on the joint and several liability provisions of § 9–10–07, N.D.C.C., and not on the "supervisory role" BMA might have had over the employer's plant.

lieve the fairest and most equitable approach in this case would be to divide the $87,500 at issue between Pittsburgh [appellant] and the settling defendants more-at-fault than Hosley in proportion to their fault. This would result in Pittsburgh paying $^{10}/_{58}$ ($15,086.21) of the figure. Hosley's judgment would be reduced by the remaining $^{48}/_{58}$ ($72,413.79) because of his indemnification agreements with the settling defendants." *Hosley, supra,* 364 N.W.2d at 817.

We find the rationale and result reached by the *Hosley* majority unpersuasive in this instance because we believe the court's decision to equitably reallocate the bankrupt defendant's percentage of fault is ultimately premised upon statutory principles that differ from our own.

In weighing the equities, the *Hosley* majority found it particularly relevant that the plaintiff had elected, over the objections of the nonsettling defendant, to sever the bankrupt defendant from the lawsuit. This consideration is especially significant because had the bankrupt defendant not been formally severed as a party from the lawsuit, the Minnesota fault reallocation statute, Minn.Stat. § 604.02, subd. 2,[6] presumably would have been applicable to serve as the basis for reallocating the bankrupt defendant's percentage of fault among the remaining causal parties. *See Hosley, supra,* 364 N.W.2d at 816. The North Dakota Legislature has not adopted a statutory scheme for reallocating the causal fault of insolvent or statutorily immune tort-fea-

sors. Moreover, under the exclusive remedy provisions of our Workmen's Compensation Act, a plaintiff employee has no ability to elect whether or not to bring suit against his or her employer. *See* § 65–01–08, N.D.C.C. Therefore, under our statutory scheme and the circumstances of the instant case, this consideration is inapplicable.

The *Hosley* majority also found relevant the following consideration:

"It would be inequitable to deny the company contribution against the settling defendants more-at-fault than Hosley merely because Hosley would ultimately pay the contribution claims. That is precisely what Hosley contracted to do. It is an expected consequence of the Pierringer settlements." *Hosley, supra,* 364 N.W.2d at 817.

We believe that the presence of the Minnesota fault reallocation statute also renders this consideration inapposite in the instant case. Although the *Hosley* majority's result might well be considered an "expected consequence" of *Pierringer* settlements in Minnesota, the same cannot be said of *Bartels* or *Pierringer* settlements in North Dakota.

■ Section 32–38–04(2), N.D.C.C., provides in pertinent part that "a release ... given in good faith to one of two or more persons liable in tort for the same injury ... discharges the tort-feasor to whom it is given from all liability *for contribution* to any other tort-feasor." [Emphasis added.] We held in *Bartels, supra,* 276 N.W.2d at

---

6. Minn.Stat. § 604.02, provides:

"*604.02. Apportionment of damages*

"Subdivision 1. When two or more persons are jointly liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that each is jointly and severally liable for the whole award.

"Subd. 2. Upon motion made not later than one year after judgment is entered, the court shall determine whether all or part of a party's equitable share of the obligation is uncollectible from that party and shall reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault. A party whose liability is reallocated is

nonetheless subject to contribution and to any continuing liability to the claimant on the judgment.

"Subd. 3. In the case of a claim arising from the manufacture, sale, use or consumption of a product, an amount uncollectible from any person in the chain of manufacture and distribution shall be reallocated among all other persons in the chain of manufacture and distribution but not among the claimant or others at fault who are not in the chain of manufacture or distribution of the product. Provided, however, that a person whose fault is less than that of a claimant is liable to the claimant only for that portion of the judgment which represents the percentage of fault attributable to him."

122, that by entering into such a release, the plaintiff's recovery "is limited to the percentage of negligence attributable to the remaining nonsettling tort-feasors as may be determined by the court or the jury, ..." Thus, by entering into a *Bartels* release in this state a plaintiff expects to have his or her recovery reduced only by that portion of causal fault attributable to the settling defendants. Given § 32–38–04(2), N.D.C.C., the joint and several liability provisions of § 9–10–07, N.D.C.C., and the absence of a statutory scheme for reallocating fault, the plaintiff does not impliedly agree, or expect as a natural consequence of entering into a settlement, that he or she will be forced to absorb portions of causal fault attributable to nonsettling tort-feasors who are either insolvent or statutorily immune from suit.

■ We conclude that Minnesota's fault reallocation statute renders the *Hosley* majority's rationale for equitably reallocating the bankrupt defendant's causal fault in that case unpersuasive under our statutory scheme, and we accordingly decline to adopt it.

■ Under the doctrine of joint and several liability, which has been codified in § 9–10–07, N.D.C.C., a defendant may be held liable for a plaintiff's total recoverable damages even when a jury finds that defendant only partially at fault. *See Layman I, supra,* 343 N.W.2d at 347, and cases cited therein; *South v. National R.R. Passenger Corp.,* 290 N.W.2d 819, 825 (N.D.1980); *see also Truscott v. Peterson,* 78 N.D. 498, 513–514, 50 N.W.2d 245, 254 (1951).

We have previously recognized that our comparative negligence statute, § 9–10–07, is ultimately derived from Wisconsin's comparative negligence statute, Wis.Stat. § 895.045. *See Day v. General Motors Corp.,* 345 N.W.2d 349, 353 (N.D.1984); *Mauch, supra,* 345 N.W.2d at 348 n. 2; *Layman I, supra,* 343 N.W.2d at 346; *Bartels, supra,* 276 N.W.2d at 118. Although the Wisconsin statute, unlike § 9–10–07, does not provide for the retention of joint and several liability, the Wisconsin Su-

preme Court has held that its comparative negligence statute did not effect any change in the common law doctrine of joint and several liability among concurrent tort-feasors. *See Bielski v. Schulze,* 16 Wis.2d 1, 6, 114 N.W.2d 105, 107 (1962); *Walker v. Kroger Grocery & Baking Co.,* 214 Wis. 519, 536, 252 N.W. 721, 727 (1934). The Wisconsin Supreme Court has on occasion been urged to adopt a rule for reallocating the fault of insolvent tort-feasors so as to reduce the plaintiff's recovery, but has rejected the approach as being contrary to the doctrine of joint and several liability.

In *Chille v. Howell,* 34 Wis.2d 491, 149 N.W.2d 600 (1967), a case cited with approval by this court in *Layman I, supra,* 343 N.W.2d at 346–347, the plaintiff was found to be 5 percent negligent, a judgment-proof defendant was found to be 75 percent negligent, and the solvent appellant was found to be 20 percent negligent. The trial court entered judgment against the appellant for 95 percent of the plaintiff's total damages. The appellant contended that the judgment-proof defendant's percentage of negligence should be redistributed between the plaintiff and itself in proportion to their own percentages of negligence. After noting that the Wisconsin comparative negligence statute did not change the common law rule that all joint tort-feasors "who are liable at all are liable to the injured person for the entire amount now recoverable by him" [*Walker, supra*], the court stated:

"The appellants urge that in this instance where recovery against Howell [judgment proof] is impossible or improbable that Chille's [plaintiff] negligence should be compared to Grimstad [solvent] as a whole which would reduce Chille's recovery by ⁵⁄₂₅ths so as to permit a recovery of 80 percent of the amount awarded rather than 95 percent as ordered by the trial court.

"The construction of the comparative negligence statute as announced in *Walker v. Kroger Grocery & Baking Co.,* supra, has been the law since 1934; several of our cases have reaffirmed the

rule based upon the ancient common-law concept of joint and several liability of joint tort-feasors. We are not persuaded it should be changed." *Chille, supra,* 34 Wis.2d at 500, 149 N.W.2d at 605.

Fault reallocation was again proposed by an appellant in *Chart v. General Motors Corp.,* 80 Wis.2d 91, 258 N.W.2d 680 (1977). In *Chart* the jury apportioned liability at 75 percent to the insolvent defendant Gutmann; 12 percent to appellant General Motors; 5 percent to settling defendant Vilas County; and 3 percent to the plaintiff. The jury also determined that two state employees were 5 percent negligent, but the trial court had entered judgment for these defendants notwithstanding the verdict. General Motors contended that Gutmann's uncollectible portion of the judgment should be redistributed between itself and the settling defendant so that General Motors would be liable for only $^{12}/_{17}$ths, and the plaintiff would bear the remaining $^{5}/_{17}$ ths, of the uncollectible portion of the judgment.

The court in *Chart, supra,* 80 Wis.2d at 108–09 n. 9, 258 N.W.2d at 687 n. 9, cited *Bielski, supra,* for the proposition that the comparative negligence statute did not "change the plaintiff's right to recover against any defendant tort-feasor the total amount of his damage to which he is entitled," and stated:

"General Motors seeks to have the judgment against it reduced in light of the Pierringer-type release executed between the plaintiffs and Vilas County. General Motors complains that the other nonsettling defendants, the Gutmanns, are judgment-proof and that the effect of the release with Vilas County is to bar General Motors' right of contribution against the only other solvent defendant (Vilas County). General Motors asks us to hold that as a consequence, plaintiffs should bear a portion of the uncollectible judgment, in the proportion that the nonsettlor's liability (General Motors) bears to the settlor's (Vilas County's) liability.

"But this proposal assumes that had Vilas County not executed a release and instead remained in the lawsuit, it would have had to share with General Motors a proportion of the amount that was uncollectible from the judgment-proof Gutmanns. There exists no rule requiring solvent, nonsettling tort-feasors to equitably share that part of a judgment which is uncollectible from an insolvent, nonsettling tort-feasor. We decline to consider such a rule here.

"Were we to consider such a rule we would, in this case, have to take a second step: Once it is determined solvent nonsettling tort-feasors must equitably share the burden of the insolvent tortfeasor's liability, we would then be required to hold that where a *Pierringer* release is executed, the plaintiff steps in the shoes of the settling tort-feasor. To so hold would defeat a plaintiff's motivation for entering into a release. The monetary value of the release to the plaintiff would become contingent on the lawsuit, and thus the certainty and rationality of fixing the rights and liabilities between the settling defendant and plaintiff would be lost. We reject General Motors' argument." *Chart, supra,* 80 Wis.2d at 109, 258 N.W.2d at 687–688 [Footnotes omitted.]

We note that a panel of the Wisconsin Court of Appeals appears to have recently adopted a rule theoretically similar to that proposed by Peterson in which the shares of negligence assigned to immune and nonparty defendants are redistributed between other defendants who nevertheless remain *jointly and severally liable for the entire amount of the judgment. See Larsen v. Wisconsin Power & Light Co.,* 120 Wis.2d 508, 355 N.W.2d 557 (Wis.App.1984); *see also Ladwig v. Ermanco Inc.,* 504 F.Supp. 1229 (E.D.Wis.1981) [applying Wisconsin law].

In *Larsen, supra,* 120 Wis.2d at 521–22, 355 N.W.2d at 563–564, the court held that the 55 percent negligence attributable to three immune and nonparty defendants should be divided according to the proportion of the remaining 45 percent negligence assigned to the two liable defendants,

which had been found by the jury to be 20 percent and 25 percent negligent, respectively. The court thus assigned $^{20}/_{45} \times 55$ percent, or 44.44 percent, to the first liable defendant and $^{25}/_{45} \times 55$ percent, or 55.56 percent, to the other liable defendant. The *Larsen* court, however, was careful to point out that:

> "*This conclusion does not alter the injured party's right to full recovery from a joint tortfeasor* more negligent than the injured party. *See Chille v. Howell,* 34 Wis.2d 491, 499–500, 149 N.W.2d 600, 604–05 (1967). The judgment modification affects only contribution rights among the tortfeasors." *Larsen, supra,* 120 Wis.2d at 521 n. 6, 355 N.W.2d at 564 n. 6 [Emphasis added.]

■ In *Layman I,* we held that the plaintiff's damage recovery against a defendant could not be reduced by the percentage of negligence attributable to the plaintiff's employer because it would be contrary to the doctrine of joint and several liability. We conclude that Peterson's proposal to redistribute the employer's percentage of fault between all causal parties so as to reduce Hoerr's recovery in this case is likewise contrary to the joint and several liability provisions of § 9–10–07, N.D.C.C., which our legislature has left intact since the statute's adoption in 1973.[7]

There are those who urge that the time has come to abolish the doctrine of joint and several liability, or to modify the doctrine by allowing fault reallocation in situations involving insolvent or statutorily immune tort-feasors, as Peterson suggests. Meritorious arguments can be made both pro and con with regard to each of these proposals. However, § 9–10–07, N.D.C.C., currently provides that each joint tort-feasor "shall remain jointly and severally liable *for the whole award.*" [Emphasis added.] If the statutorily-imposed doctrine of joint and several liability is perceived as being unfair and in need of abolishment or modification, it is the prerogative of the legislature, the policy-making branch of government, to effect the necessary changes. We reiterate that "any changes in the comparative negligence act, or the exclusive remedy provisions and subrogation provisions of the workmen's compensation statutes are matters best left to our legislature."[8] *Layman I, supra,* 343 N.W.2d at 350. *See also Gernand v. Ost*

---

7. The drafters' comments to the Uniform Comparative Fault Act's provisions on fault reallocation also recognize the incompatibility between reallocation and the doctrine of joint and several liability:

> "*Joint and Several Liability and Equitable Shares of the Obligation.* The common law rule of joint-and-several liability of joint tort-feasors continues to apply under this Act. This is true whether the claimant was contributorily negligence [sic] or not. The plaintiff can recover the total amount of his judgment against any defendant who is liable.
>
> "The judgment for each claimant also sets forth, however, the equitable share of the total obligation to the claimant for each party, based on his established percentage of fault. This indicates the amount that each party should eventually be responsible for as a result of the rules of contribution. Stated in the judgment itself, it makes the information available to the parties and will normally be a basis for contribution without the need for a court order arising from motion or separate action.
>
> "*Reallocation.* Reallocation of the equitable share of the obligation of a party takes place when his share is uncollectible.

> "Reallocation takes place among all parties at fault. This includes a claimant who is contributorily at fault. *It avoids the unfairness both of the common law rule of joint-and-several liability, which would cast the total risk of uncollectibility upon the solvent defendants,* and of a rule abolishing joint-and-several liability, which would cast the total risk of uncollectibility upon the claimant." Unif. Comparative Fault Act § 2, Comment, 12 U.L.A. 44 (Supp.1985) [Emphasis added.]

8. We note that the 49th Legislative Assembly passed a concurrent resolution "directing the Legislative Council to study the comparative negligence laws and their interaction with the products liability, strict liability, and workmen's compensation laws in light of recent North Dakota Supreme Court decisions." 1985 N.D.Sess. Laws Ch. 852. One possible legislative solution is outlined in Note, *Glass v. Stahl Specialty Company: Reconciling Third Party's Contribution Rights with Employer's Immunity under Workers' Compensation,* 6 U. Puget Sound L.Rev. 343 (1983).

*Services, Inc.,* 298 N.W.2d 500, 505 (N.D. 1980); *Sayler v. Holstrom,* 239 N.W.2d 276, 283 (N.D.1976).

■■■ We conclude that the trial court properly entered judgment against Peterson on the negligence verdict for 67.5 percent of Hoerr's total damages.

V

■■■ Hoerr asserts that Peterson's appeal is frivolous and has not been taken in good faith, thereby justifying an award of damages, costs, and attorney fees pursuant to Rule 38, N.D.R.App.P. We do not consider Peterson's appeal to be frivolous or to have been taken in bad faith. *See Houser v. Gilbert,* 364 N.W.2d 62, 66 (N.D.1985). Accordingly, Hoerr's motion is denied.

For the reasons stated in this opinion, the judgment is affirmed.

ERICKSTAD, C.J., and MESCHKE, J., concur.

VANDE WALLE, Justice, concurring in part and dissenting in part.

I concur in parts I, II, III, and V of the majority opinion. I cannot agree with part IV thereof and therefore I respectfully dissent to that part of the majority opinion.

In *Layman v. Braunschweigische Maschinenbauanstalt,* 343 N.W.2d 334, 351 (N.D.1983) (*Layman I*), I expressed my concern as to the equity in requiring a defendant to assume the share of the liability of the plaintiff's employer who, by statute, is immune from suit. I "reluctantly" concurred in the result reached therein because it appeared to me that "a resolution which does not penalize an employee who is injured through no negligence of his own is a more just resolution than one which would result in reducing the liability of a negligent third party at the expense of the innocent employee, ..." I further noted therein that an alternative resolution suggested by Justice Sand's dissenting opinion had been discussed in *Sayler v. Holstrom,* 239 N.W.2d 276 (N.D.1976), but rejected because it was a matter for legislative attention.

The current issue is not, as the majority opinion recognizes, the same issue we faced in *Layman I.* In *Layman I,* because of the statutory prohibition against an employee's bringing action against an employer under workmen's compensation coverage, the plaintiff was powerless to bring the employer into the suit. There was no release by the plaintiff of any potential defendant. Here, the plaintiff, through his release of some, but not all, of the defendants has, by his own action, created immunity for those defendants with whom he has settled. I would not, therefore, extend the application of *Layman I* to this case. As Justice Gierke noted in his concurring opinion in *Layman I,* 334 N.W.2d at 352, we cannot "equate the giving of a voluntary release, as in the *Bartels* case, with the statutory provisions of § 65–01–08, N.D.C.C."

I would apply the rationale of the majority opinion in *Hosley v. Armstrong Cork Co.,* 364 N.W.2d 813 (Minn.App.1985), that under the common law equitable contribution is a flexible concept; that there is no standard or rule to be universally applied; and that relief is to be fashioned in light of the equitable dilemma presented. Although the majority attempts to distinguish *Hosley* on the basis of a Minnesota statute providing for statutory reallocation because North Dakota has no such statute, the opinion is clear in stating that because the bankrupt party (Johns-Manville Sales Corporation) "was formally severed from the proceeding and was not a party to the lawsuit the statute is inapplicable." 364 N.W.2d at 816. I would therefore conclude that the liability of the employer, Custom, should not rest entirely with G.C. Peterson Company, Inc., but rather should be divided between Peterson and the settling defendants in proportion to their fault. Such a solution is in accord with this court's decision in *Bartels v. City of Williston,* 276 N.W.2d 113 (N.D.1978), and does no violence to the decision of the court in *Layman I* because, as noted above, here the plaintiff, Hoerr, voluntarily released the other defendants from liability.

It may be said that the solution I have suggested discourages settlements. That may be the result but I cannot conclude that encouraging settlements should be the touchstone of our judicial system. Rather, it appears to me that equity requires that the plaintiff, who is already permitted to recover the share of the employer's liability from the other defendants, but who has released some, but not all, of those defendants from liability, should not be entitled to recover all of the employer's share of liability from the nonsettling defendants.

LEVINE, J., concurs.