FARMERS CO–OP ELEVATOR OF CAVALIER, Plaintiff and Appellee,

v.

Lionel LEMIER, Defendant and Appellant.

Civ. No. 10272.

Supreme Court of North Dakota.

Dec. 30, 1982.

DePuy, Kopperud, Goulet & Hall, Grafton, for defendant and appellant; argued by W.R. Goulet, Jr., Grafton.

Fleming & DuBois, Cavalier, for plaintiff and appellee; argued by Neil W. Fleming, Cavalier.

PAULSON, Justice.

Lionel Lemier appeals from an order denying a motion for a judgment notwithstanding the verdict dated June 9, 1982, and issued by the District Court of Pembina County. We affirm.

Farmers Co-op Elevator, Cavalier, North Dakota [Elevator] is engaged in the business of buying and reselling grain. Lionel Lemier [Lemier] is a farmer who has farmed in the Cavalier area for a number of years. Ray Robinson [Robinson], at the time the contract at issue in this case was entered into, was the manager of the Elevator and had acted in that capacity for at least fourteen years.

Lemier hauled grain to the Elevator during the spring and summer of 1980. On April 15, 1980, Robinson and Lemier entered into an oral agreement whereby Lemier would sell 12,000 bushels of durum to the Elevator at the price of $4 per bushel, with possible discounts of from 15¢ to 30¢ per bushel, depending upon the grade, weight, and color of the grain. Delivery of the grain was to take place during the month of October 1980. Robinson reduced the oral agreement to writing by preparing a written contract which he then signed and placed in Lemier's file in the Elevator office. The written contract was never signed by Lemier. Robinson, as manager of the Elevator, subsequently sold the 12,000 bushels of grain to a commission firm. Lemier had knowledge of this transaction.

The price of durum increased during the summer of 1980 as did the amount of the discounts; however, the discounts in the instant case were governed by the contract of April 15, 1980. Lemier failed to deliver the durum in October 1980 and, accordingly, Robinson contacted Lemier in November

1980 to determine whether or not he would deliver the grain. Lemier refused to deliver the grain at the price of $4 per bushel.

In November 1980 the commission firm required the Elevator to repurchase the 12,-000 bushels of durum at $5.83 per bushel. Robinson then contacted Lemier and informed him that the durum could be repurchased at $1.83 per bushel, but Lemier refused to pay that amount. Thereafter, the Elevator commenced an action against Lemier for breach of an oral contract of sale. Lemier, in his answer, generally denied the allegations of the complaint and, further, counterclaimed for damages.[1]

The case was tried to a jury. At the close of the Elevator's case, Lemier made a motion for a directed verdict which was denied by the district court. The Elevator, at the close of the trial, made a motion for a directed verdict which was also denied by the court. The case was then submitted to the jury for a special verdict on the issue of whether or not an oral contract was formed between the parties. The jury found that an oral contract was formed and returned the special verdict in favor of the Elevator. The trial court incorporated the special verdict into its order, together with the assessment of damages in the sum of $21,960, plus interest, costs, and disbursements.

A post-trial motion for a judgment notwithstanding the verdict was submitted by Lemier to the court and denied by the trial judge. Lemier appeals from the order denying his motion for a judgment notwithstanding the verdict.

Lemier raises the following issues on appeal: (1) Did the Farmers Co-op Elevator, Cavalier, North Dakota, carry its burden of proving that a contract existed with Lionel Lemier; and, (2) Did the court err in denying Lemier's motion for a directed verdict and for a judgment notwithstanding the verdict?

The question of whether or not an oral contract existed between the parties was submitted to the jury for a special verdict. The jury rendered a verdict as follows:

1. Lemier did not plead the statute of frauds as an affirmative defense and the statute of frauds is not an issue on appeal.

"QUESTION NO. 1: Has Plaintiff, by a preponderance of the evidence, proved that an oral contract was formed between Plaintiff and Defendant?
Answer yes or no.     ANSWER   yes

(Note: If your answer is "no" your work is finished. Sign and return to courtroom. If your answer is "yes" then go to Question No. 2.
"QUESTION NO. 2: Has Plaintiff used reasonable efforts to lessen its damages?
Answer yes or no.     ANSWER   yes   "

In *Powers v. Martinson,* 313 N.W.2d 720, 728 (N.D.1981) this court stated:

"Our review of questions of fact is limited to consideration of whether or not there is substantial evidence to sustain the jury verdict. In determining whether or not there is substantial evidence to sustain the verdict, we will not invade the province of the jury to weigh evidence or to determine the credibility of witnesses. In reviewing the evidence, we will view it in the light most favorable to the verdict and if there is substantial evidence to support the verdict, we will not set it aside." [Citation omitted.]

In the instant case, both parties testified as to the nature of a discussion between the parties on April 15, 1980, concerning the sale of 12,000 bushels of number one hard amber durum for a price of $4 per bushel. On direct examination, Robinson testified as follows:

"Q [By Mr. Fleming, plaintiff's counsel] Did you have a conversation with Mr. Lemier while he was hauling wheat on the 15th of April?

"A Yes, we talked different times when he was in there.

"Q On the 15th of April, did you and Mr. Lemier enter into a discussion regarding the sale of number one hard amber durum?

"A Yes, we did.

Lemier's counterclaim was withdrawn during the trial.

"Q   Would you explain to the jury and the court what transpired in that conversation as near as you can tell?

"A   We were talking about the price and I told him $4.00 a bushel and he said he would sell 12,000 bushels at that price with a contract for October delivery.

"Q   What did you say?

"A   I told him I would write up a contract and he could check later on when he came in.

"Q   At that point, was there any question in your mind that Mr. Lemier had sold you the grain?

"A   No, that is all that is necessary."

Lemier testified on direct examination as follows:

"Q   [By Mr. Goulet, defendant's counsel] I would ask, Mr. Lemier, in this situation, can you just discuss what the conversation was then on April 15th?

"A   Okay, I shall.

"Q   With Mr. Robinson, if you recall?

"A   Yes.   We had a conversation on what I was going to plant this spring, etc., and I told him I was going to plant some durum and he said, why don't you future contract some grain.   I said, I don't usually like to sell something I don't have. He said to me, don't worry about that.   There is 37 percent more durum planted this year than last. There is lots of durum around the country, to fill your deal, so don't worry about it.   So eventually then he did sell some grain down in Minneapolis.

"Q   Were you aware of that at the time?

"A   Was I aware of what?

"Q   The fact that he was going to sell the grain in Minneapolis?

"A   I was aware.   We talked about it and what he was going to do, yes.

"Q   Did he indicate to you not to worry about that because of the excess durum there would be?

"A   Right.   There was nothing discussed that day about discounts.

"Q   What did you discuss, is what I am interested in?

"A   About selling this grain, and he told me not to worry about it.

"Q   What kind of things did you discuss in selling the grain?   You know, whether or not you discussed price and quantity at that time?

"A   Yes, 12,000 bushels and it was supposed to be $4.00 a bushel.

"Q   Was that all that was discussed?

"A   That was all that was discussed.

"Q   Did he ever say, now, with this there is going to be a delivery date?

"A   No, he did not."

On cross-examination Lemier testified as follows:

"Q   [By Mr. Fleming] You did not deliver grain in October, November or December of 1980?

"A   No, I did not.

"Q   You are—based on your discussion in April at the time Mr. Robinson had made a deal with you?

"A   That is correct.   That—

"Q   Thank you.

"A   That we had made a deal, but he never asked for delivery of this grain.

"Q   You made a deal with Mr. Robinson in April for 12,000 bushels at $4.00 a bushel?

"A   Some kind of deal, yes.   I don't think it was a contract.   It was a deal.   It was a deal."

■   Upon our review of the record, including the foregoing testimony, we conclude that there is substantial evidence to support the jury's finding that a contract was formed between the Elevator and Lemier.   Accordingly, Lemier's contention that the Elevator failed to carry its burden of proving that a contract existed between the parties is without merit.   Because there is substantial evidence to sustain the jury verdict, we will not set it aside.

The second issue raised by Lemier is whether or not it was proper for the trial court to deny his motions for a directed verdict and for a judgment notwithstanding the verdict. Lemier contends that the evidence was insufficient to create a question of fact for the jury.

 In determining whether or not the evidence is sufficient to create an issue of fact, and, consequently, in determining whether or not a motion for a directed verdict or for judgment notwithstanding the verdict should be granted, the trial court must ascertain whether or not the evidence, when viewed most favorably to the party against whom the motion is made and without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, is such that reasonable men could reach but one conclusion as to the verdict. *Okken v. Okken,* 325 N.W.2d 264 (N.D.1982); *Anderson v. Kroh,* 301 N.W.2d 359 (N.D.1980); *Nokota Feeds, Inc. v. State Bank of Lakota,* 210 N.W.2d 182 (N.D.1973). In employing this standard, the trial judge is required to accept the truth of the evidence presented by the party opposing the motion and the truth of all reasonable inferences from that evidence which supports the jury verdict. The trial court must give proper deference to the jury's evaluation of the evidence and its judgment of the credibility of the witnesses. *Okken, supra.*

In the trial court's order denying Lemier's motion for judgment notwithstanding the verdict, the trial judge stated, in pertinent part:

"(1) That viewing the evidence in a light most favorable to the Plaintiff [Elevator], there was sufficient evidence to support the verdict.

"(2) That reasonable men could differ on the conclusions to be arrived at from the evidence presented and this Court will not substitute my judgment for that of the jury.

"(3) That this court is satisfied, upon reexamination of the questions raised previously, that a directed verdict would not have been appropriate."

We agree with the trial court. The evidence presented to the jury, including the testimony quoted in this opinion, was sufficient for the jury to find that an oral contract existed. Furthermore, upon reviewing the evidence in this case in a light most favorable to the Elevator, the party against whom the motions were made, we conclude that the trial court did not abuse its discretion in denying Lemier's motions for a directed verdict and for a judgment notwithstanding the verdict. It cannot be said when viewing the testimony presented to the jury that the only reasonable conclusion that could be drawn therefrom is that no contract was formed between Lemier and the Elevator.

For the reasons stated in this opinion, we affirm.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.