Charles BUTZ, Jr., Plaintiff, Appellee and Cross–Appellant,

v.

Jack A. WERNER, Defendant, Appellee and Cross–Appellee,

and

World Wide, Inc., a Minnesota corporation, and Cass Oil Co., a North Dakota corporation, Defendants, Appellants and Cross–Appellees.

Civ. No. 870336.

Supreme Court of North Dakota.

March 21, 1989.

**510**

Morley & Morley, Ltd., Grand Forks, for plaintiff, appellee, and cross-appellant; argued by Patrick R. Morley.

LaRoy Baird III (argued), Bismarck, for defendant, appellee, and cross-appellee.

Cahill & Maring, P.A., Moorhead, Minn., for defendants, appellants, and cross-appellees; argued by Steven J. Cahill.

GIERKE, Justice.

Cass Oil Co. [Cass] and World Wide, Inc. [World] appeal from a district court judgment awarding damages to Charles Butz, Jr., for injuries he sustained while riding on a "Super Tube." We affirm.

On June 16, 1984, Butz was severely injured while riding a "Super Tube" which was sold and distributed by Cass and World. The Super Tube is a large, bright yellow inner tube with handles for the rider. The tube comes with a harness so that it may be attached to a water-ski towrope and pulled behind a boat.

The tube which Butz was riding had been purchased a few weeks earlier by his friend Jack Werner. On the day of the accident Butz and Werner had been fishing. They decided to try out the tube, which Werner had not used before. Butz took the first ride, with Werner driving the boat. Two other people rode along in the boat, with one serving as a spotter.

With Butz on the tube behind the boat, Werner made one or two large circles out in an open area of the river and then headed back near shore. The testimony as to exactly what happened next is somewhat conflicting, but the tube with Butz aboard went skimming along the shoreline for a distance and then slammed into a boat which was sitting partially in the water and partially on the shore. As a result, Butz sustained serious injuries.

Butz sued Werner, World, and Cass, on theories of negligence, strict products liability, and breach of warranty. The case was tried to a jury and the trial court instructed on all three theories. The jury found for Butz on the strict liability theory; found that all four parties were negligent under the negligence theory; and found no breach of warranty.

The verdict form submitted to the jury required separate assessment of fault under the negligence and strict liability theories. On the strict liability theory, the jury assessed fault as follows:

| | |
|---|---|
| World | 37½% |
| Cass | 37½% |
| Werner | 0% |
| Butz | 25% |

On the negligence theory, fault was assessed as follows:

| | |
|---|---|
| World | 25% |
| Cass | 25% |
| Werner | 15% |
| Butz | 35% |

The jury found that Butz's damages totaled $550,479.79.

The trial court entered judgment on the strict liability claim and dismissed the negligence and breach of warranty claims. The motions of Cass and World for judgment notwithstanding the verdict or a new trial were denied by the trial court. Cass and World have appealed.[1]

## I. DUTY TO WARN

Cass and World assert that the trial court erred in failing to hold that as a matter of law there was no duty to warn.

■ The parties initially disagree whether the existence of a duty to warn is a question of law for the court or a question of fact for the jury. In a negligence action, whether a duty exists is generally a preliminary question of law for the court. *Barsness v. General Diesel & Equipment Co.*, 383 N.W.2d 840, 843 (N.D.1986). However, if the existence of a duty depends upon factual determinations, their resolution is for the trier of fact. The appropriate procedure in such cases is for the court to instruct the jury as to the defendant's duty, or absence of duty, if certain facts are found. *Barsness v. General Diesel & Equipment Co., supra*, 383 N.W.2d at 843; Restatement (Second) of Torts § 328B comment e (1965).

■ The parties have cast their arguments on this issue in terms of the defendants' duty to warn. The judgment appealed from, however, is based upon the jury verdict on the strict liability cause of action. The problem with casting the issue in terms of a duty to warn is that it focuses on the defendants' *conduct*, whereas strict liability focuses upon the nature of the product. *Mauch v. Manufacturers Sales & Service, Inc.*, 345 N.W.2d 338, 346 (N.D. 1984). The relevant inquiry in a strict lia-

bility action based upon failure to warn is whether the defendant marketed a product which was unreasonably dangerous to the user because of inadequate warnings. *Mauch, supra*, 345 N.W.2d at 345.

■ Whether a product is unreasonably dangerous to the user because of a lack of proper warnings is generally a question of fact. *See, e.g., Kysor Industrial Corp. v. Frazier*, 642 P.2d 908, 912–913 (Colo.1982) (en banc); *Martinez v. Atlas Bolt & Screw Co.*, 636 P.2d 1287, 1289 (Colo.App.1981); *Pepper v. Selig Chemical Industries*, 161 Ga.App. 548, 288 S.E.2d 693, 696 (1982); *Collins v. Sunnyside Corp.*, 146 Ill.App.3d 78, 100 Ill.Dec. 90, 92, 496 N.E.2d 1155, 1157 (1986); *Ebbert v. Vulcan Iron Works, Inc.*, 87 Ill.App.3d 74, 42 Ill.Dec. 617, 618, 409 N.E.2d 112, 113 (1980); *Phillips v. Kimwood Machine Co.*, 269 Or. 485, 525 P.2d 1033, 1040 (1974) (en banc); *Berg v. Sukup Manufacturing Co.*, 355 N.W.2d 833, 837 (S.D.1984); *Haysom v. Coleman Lantern Co.*, 89 Wash.2d 474, 573 P.2d 785, 789 (1978); 3 American Law of Products Liability 3d § 32:83, at 126 (1987).

We noted in *Mauch, supra*, that " '[i]t is the adequacy of the warning which is given, or the necessity of such a warning, which must command the jury's attention, not the defendant's conduct.' " *Mauch, supra*, 345 N.W.2d at 346 (quoting *Little v. PPG Industries, Inc.*, 92 Wash.2d 118, 594 P.2d 911, 914 (1979) (en banc)). In *Stillwell v. Cincinnati Inc.*, 336 N.W.2d 618, 622 (N.D.1983), a strict liability action based on both design defect and failure to warn, we stated that "whether or not a manufacturer fits within the parameters of strict liability in tort is essentially a factual question for the trier of fact."

■ Cass and World assert that there was no duty to warn in this case because the dangers of using the Super Tube were open and obvious. In the context of a strict liability action, their argument must be that the lack of warnings did not render the Super Tube unreasonably dangerous because, as a matter of law, the dangers

---

1. Butz has filed a cross-appeal alleging that, if a new trial is necessary, the issue of Werner's liability under the negligence theory should be included in the retrial.

were open and obvious. Assuming for the purpose of argument that openness and obviousness of the dangers may constitute an absolute defense in a strict liability action based upon failure to warn,[2] we find no merit in the defendants' contentions under the facts of this case. Cass and World argue that it is apparent to everyone of common intelligence that there is danger in colliding with a fixed object. Butz, however, has never asserted that Cass and World should have warned that it was dangerous to crash the Super Tube into a fixed object. Butz's contention, which was supported by expert testimony, was that Cass and World should have warned that the Super Tube should not be towed above a certain speed; that the Super Tube would accelerate and arc around corners; that the rider would have no control of the direction or speed of the Super Tube; and that the rider's visibility would be impaired by the "spray" from the Super Tube. It was this failure to warn of speed restrictions, excessive arcing, lack of control, and lack of visibility which Butz asserts was a primary cause of the collision.

We conclude that the trial court did not err in failing to rule as a matter of law that the open and obvious nature of the dangers associated with the Super Tube obviated any need for warnings. The court properly submitted to the jury the issue whether the Super Tube was unreasonably dangerous because of the lack of warnings.

## II. CAUSATION

Cass and World assert that Butz failed to prove that the lack of warnings on the Super Tube was a direct cause of his injuries.

**2.** The appellees have not challenged Cass and World's assertion that openness and obviousness of the danger wholly obviates the necessity of a warning. We have previously noted, however, that obviousness of the danger does not automatically preclude liability in a strict liability failure-to-warn case. *Olson v. A.W. Chesterton Co.*, 256 N.W.2d 530, 537 (N.D.1977). We agreed with cases from other jurisdictions holding that obviousness of the danger is merely one factor to be considered in determining whether the product is unreasonably dangerous. *Olson, supra,* 256 N.W.2d at 537.

Proximate causation in a negligence case is a question of fact. *E.g., Priel v. R.E.D., Inc.,* 392 N.W.2d 65, 69 (N.D.1986). Implicit in our holding in *Mauch, supra,* is that proximate causation is also a question of fact in a strict liability case. *See Mauch, supra,* 345 N.W.2d at 347–348. Courts in other jurisdictions have expressly so held. *E.g., Prince v. Parachutes, Inc.,* 685 P.2d 83, 89 (Alaska 1984); *Kavanaugh v. Kavanaugh,* 131 Ariz. 344, 641 P.2d 258, 266 (Ct.App.1981).

Our review of questions of fact in a jury case is limited to consideration of whether there is substantial evidence to sustain the verdict. *Farmers Co-op. Elevator of Cavalier v. Lemier,* 328 N.W.2d 833, 835 (N.D.1982). We will not invade the province of the jury to weigh evidence or determine the credibility of witnesses. *Farmers Co-op. Elevator, supra.* We view the evidence in the light most favorable to the verdict and if there is substantial evidence to support the verdict we will not set it aside. *Farmers Co-op. Elevator, supra.*

Cass and World assert that the lack of warnings did not proximately cause the accident; Butz and Werner assert that it did. There is evidence in the record to support a finding either way. Under these circumstances, we will not substitute our judgment for that of the jury, which heard the testimony and had the opportunity to judge the credibility of the witnesses. *See Hoerr v. Northfield Foundry and Machine Co.,* 376 N.W.2d 323, 326 (N.D.1985). We conclude that there is substantial evidence to support the jury's finding that the lack of warnings proximately caused Butz's injuries.

Cass and World assert that we held that there was no duty to warn of open and obvious dangers in *Stillwell v. Cincinnati Inc.,* 336 N.W.2d 618 (N.D.1983). The language quoted by Cass and World to support their contention, however, is language we quoted from the trial court's memorandum opinion in that case. We specifically declined to consider the open and obvious danger doctrine, instead relying upon the trial court's findings that there were adequate warnings given and that the product was therefore not unreasonably dangerous. *Stillwell, supra,* 336 N.W.2d at 624.

## III. ADMISSION OF EXPERT TESTIMONY

Cass and World assert that the trial court erred in allowing Butz's expert witness, Albert Tillman, to testify regarding the necessity of specific warnings on the Super Tube.

Admission of expert testimony is governed by Rule 702, N.D.R.Evid.:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

The test for admission of expert testimony under Rule 702 is whether such testimony will assist the trier of fact and whether the witness is qualified as an expert. *Patch v. Sebelius*, 349 N.W.2d 637, 643 (N.D.1984). The determination to admit expert testimony rests within the sound discretion of the trial court, and its determination will not be disturbed on appeal unless the court has abused its discretion. *Victory Park Apartments, Inc. v. Axelson*, 367 N.W.2d 155, 163 (N.D.1985). .

It was for the trial court to determine whether Tillman was qualified to testify as an expert and whether his testimony would assist the jury. We have reviewed the record and we conclude that the trial court did not abuse its discretion in allowing Tillman to testify.

## IV. ELECTION OF THEORY OF RECOVERY, PERVERSITY OF VERDICT, AND COMBINED FAULT ASSESSMENT

Cass and World next assert three intertwined arguments. They assert that: (1) the trial court should have required Butz to elect one theory of recovery before submission to the jury, rather than submitting negligence, strict liability, and breach of warranty; (2) the jury verdict, which assessed different percentages of fault to each party under the separate negligence and strict liability theories, was illogical, perverse, and irreconcilable; and (3) if multiple theories were submitted, the trial court should have submitted them to the jury on a combined fault assessment form, rather than with separate fault assessments for the differing theories.

### A. *Election of Theories*

■ Cass and World assert that it was error to allow the case to go to the jury on multiple theories, and that the trial court should have required Butz to elect one theory of recovery.

Rules 8(a) and 18(a), N.D.R.Civ.P., generally allow a party to plead multiple claims against another party. In the specific context of a failure-to-warn case premised on both negligence and strict liability, we have held:

"Although the authorities disagree over this issue, we believe that recovery sought under a negligent failure-to-warn theory and recovery sought under a products-liability theory of marketing a product which is defective and unreasonably dangerous because it is not accompanied by adequate warnings are two separate and distinct theories of recovery. Thus the trial court must instruct on each where there is evidence to support both theories." *Mauch, supra,* 345 N.W.2d at 345.

The trial court did not err in refusing to require Butz to elect one theory of recovery.

### B. *Perversity of the Verdict*

■ Cass and World assert that the verdict is illogical, perverse, and irreconcilable because the jury assessed different percentages of fault under the negligence theory and the strict liability theory.

The jury assessed fault as follows:

| STRICT LIABILITY | | NEGLIGENCE | |
|---|---|---|---|
| World | 37½% | World | 25% |
| Cass | 37½% | Cass | 25% |
| Werner | 0% | Werner | 15% |
| Butz | 25% | Butz | 35% |
| | 100% | | 100% |

Cass and World assert that fault is fault, and the percentages should not vary under the differing theories. Cass and World,

however, are analyzing the issue from a purely factual perspective. There may be a distinction between *factual* "fault" and *legal* "fault," depending upon the legal theory imposed.

In *Mauch, supra,* we held that ordinary contributory negligence is not a defense in a strict liability action:

> "We believe the better rationale, and the one we choose to follow in this case, is that the plaintiff's conduct should not be scrutinized in ordinary 'contributory negligence' terminology as a defense to a products-liability claim. The focus of a products-liability action is on whether or not the product is defective and unreasonably dangerous, and thus the reasonableness of the defendant's conduct under negligence concepts is not relevant to this action. The defenses which we have previously recognized in [*Olson v. A.W. Chesterton Co.,* 256 N.W.2d 530 (N.D. 1977)] of assumption of risk and unforeseeable misuse are, in our opinion, adequate to protect a seller or manufacturer from unjust liability in a case of this type." *Mauch, supra,* 345 N.W.2d at 347.

We explained the rationale of our holding:

> "The defenses of assumption of the risk and product misuse focus, as does the products-liability claim itself, upon the nature of the product and its use. We believe that the interjection of ordinary contributory negligence principles would only serve as a diversion from the proper focus on the product and its use in such a case without providing any needed additional protection to the defendant seller or manufacturer which the defenses of assumption of risk and unforeseeable misuse of the product do not already provide." *Mauch, supra,* 345 N.W.2d at 347.

Thus, ordinary negligence of the plaintiff or a third party [3] which does not constitute assumption of risk or unforeseeable misuse is irrelevant in a strict liability action, and cannot be compared with the manufacturer or seller's strict liability in assessing fault.

In light of *Mauch,* it is easily understandable how the jury in this case assessed different percentages of fault under the different legal theories. The ordinary negligence of Butz and Werner is considered for purposes of assessing fault under the negligence theory, but is wholly irrelevant in the strict liability action. This ordinary negligence, although clearly a *factual* "fault" of the accident, is not a *legal* "fault" under the strict liability theory.

Thus, in the negligence action, the jury considered Butz and Werner's ordinary negligence and assessed Butz thirty-five percent fault and Werner fifteen percent fault. Under the strict liability theory Butz and Werner's conduct was relevant only to the extent it constituted assumption of risk or unforeseeable misuse. The jury assessed Butz twenty-five percent fault, apparently concluding that Butz's conduct constituted assumption of the risk. The jury assessed Werner no fault under the strict liability theory, apparently concluding that Werner's conduct did not rise to the level of unforeseeable misuse.

We conclude that the verdict is not "illogical, perverse, and irreconcilable." Instead, the verdict demonstrates that the jury carefully followed the trial court's instructions, which clearly and explicitly spelled out the differing considerations and defenses available under the negligence and strict liability theories.

## C. *Combined Fault Assessment Form*

■ Cass and World assert that the trial court erred in refusing their request

---

**3.** Cass and World assert that *Mauch* addresses only the plaintiff's negligence, and suggest that *Mauch* would not preclude a defense based upon a third party's ordinary negligence. Cass and World cite no authority for this assertion. Furthermore, we see no logical reason to differentiate between the plaintiff's ordinary negligence and that of a third party for strict liability purposes. The same rationale would apply: "the interjection of ordinary contributory negligence principles would only serve as a diversion from the proper focus on the product and its use." *Mauch, supra,* 345 N.W.2d at 347. If the third party's conduct constituted unforeseeable misuse of the product it could serve as a defense pursuant to *Mauch.*

that the case be submitted on a combined fault assessment form.

We expressly reserved resolution of this question in *Hoerr v. Northfield Foundry and Machine Co.*, 376 N.W.2d 323, 327 (N.D.1985), because the defendant had failed to preserve the issue in the trial court. Our resolution of the issue, however, follows by implication from our analysis in *Mauch*. As previously discussed, ordinary negligence is not a defense in a strict liability action, and the ordinary negligence of the plaintiff or a third party is not to be considered in assessing fault. Thus, the ordinary negligence of the plaintiff or a third party cannot be employed to diminish the percentage of fault attributable to the defective nature of the product.

Cass and World have not offered a plausible verdict form which would combine fault assessment for the negligence and strict liability theories, yet isolate the determination of strict liability percentages from the ordinary contributory negligence considerations applicable to the negligence cause of action. Nor can we envision a verdict form which would combine fault assessment of the two theories without eviscerating *Mauch*. Using any combined assessment form, an increase or decrease in the percentage of negligence attributed to Butz or Werner would have a corresponding effect on the percentage of fault left available to assess against Cass and World on the strict liability claim. *Mauch* clearly prohibits such a result.

Strict products liability and negligence are "separate and distinct theories of recovery." *Mauch, supra,* 345 N.W.2d at 345. Strict liability focuses upon the product and its use, whereas negligence focuses on the conduct of the parties. Different defenses are available under the two theories. Our analysis leads to the conclusion that there is no logical method to combine fault assessment under the two theories without effectively blending them to the point of destroying their functions as separate theories of recovery.

Our conclusion today is bolstered by our holding in *Hoerr, supra,* where the appropriateness of using separate fault assessment forms was questioned on appeal, but the defendant had failed to object to the special verdict form in the trial court. We were, however, required to determine the effect of the combined fault assessment form. The defendant argued that the fairest compromise would be to average the strict liability and negligence fault assessments, rather than allow Hoerr to choose to have judgment entered on the theory which provided the greater amount of recovery. We rejected the defendant's contention, and expressly agreed with the following rationale of the Supreme Court of New Jersey in a similar case:

> " 'We perceive of no reason to disavow th[e strict liability] verdict merely because the plaintiff was also found entitled to recover due to Fireco's negligence. Where a defendant is found liable on the theory of strict liability, plaintiff's entitlement to recovery should not be diminished or altered because defendant is also liable on another theory of wrongdoing.... "When a jury verdict sustains several alternative theories of recovery advanced by a plaintiff, the trial court must [unless plaintiff chooses otherwise] render judgment on the theory which affords the greatest recovery." *Mowery v. Fantastic Homes, Inc.,* 568 S.W.2d 171, 173 (Tex.Civ.App.1978).' " *Hoerr, supra,* 376 N.W.2d at 328 (quoting *Cartel Capital Corp. v. Fireco of New Jersey,* 81 N.J. 548, 564–565, 410 A.2d 674, 682–683 (1980)).

This rationale supports our conclusion that separate fault assessment forms are proper. We believe that if a combined fault assessment form were used, in many cases a plaintiff's recovery would be "diminished or altered because defendant is also liable on another theory of wrongdoing." A combined fault assessment form would effectively require comparison of the defendant's strict liability with the plaintiff's ordinary negligence, which is a factual fault of the accident but is not legal fault under a strict products liability claim. The result could be to improperly diminish or alter the recovery which the plaintiff would have been entitled to under separate

fault assessments. We can discern no reason why a plaintiff who can prove two separate causes of action, and thus two separate wrongs by the defendant, should be required to risk diminution of his recovery because he prevails on both theories. If the plaintiff can prove two separate theories he is entitled to have the jury instructed on the separate theories, to have fault assessed separately on each theory, and to have judgment entered on the theory which provides the greater recovery. *See Hoerr, supra,* 376 N.W.2d at 327–328.

Cass and World suggest that a recently enacted statute, Chapter 32–03.2, N.D.C.C., requires that combined fault assessment forms be used in cases such as this. Initially we note that Chapter 32–03.2 applies only to claims accruing after July 8, 1987. Cass and World assert that they do not seek retroactive application of the statute, but rather suggest that the statute is indicative of the state's public policy and should be used to "fill the void" left from our prior decisions.

Cass and World rely upon *Davis v. Auto–Owners Insurance Co.,* 420 N.W.2d 347 (N.D.1988), to support their argument. In *Davis* we noted that a later-enacted statute may be indicative of earlier public policy "[a]bsent anything contrary." *Davis, supra,* 420 N.W.2d at 349. As previously discussed, however, *Mauch* is contrary to Cass and World's interpretation of the public policy expressed in the statute, and adoption of their argument would not merely "fill the void" but would seriously erode the holding of *Mauch.* We will not apply the statute retroactively, and we will not adopt the alleged public policy basis of the statute in resolving this case.[4]

We conclude that the trial court did not err in refusing to submit a combined fault assessment form.

4. We express no opinion whether, as Cass and World assert, Chapter 32–03.2, N.D.C.C., requires the use of a combined fault assessment form in a case involving both negligence and strict liability claims which accrues after July 8, 1987.

## V. FAULT ASSESSMENT

Cass and World assert that Werner's fault exceeded Butz's fault as a matter of law, and that the jury's fault assessment under the strict liability and negligence theories demonstrates that the verdict was perverse and unsupported by the evidence.

Issues of negligence, proximate cause, and comparative negligence are questions of fact for the trier of fact unless the evidence is such that reasonable minds can draw but one conclusion. *Layman v. Braunschweigische Maschinenbauanstalt, Inc.,* 343 N.W.2d 334, 339 (N.D.1983); *Bauer v. Graner,* 266 N.W.2d 88, 92 (N.D. 1978). Apportionment of fault is also a question of fact. *See Bauer, supra,* 266 N.W.2d at 92. Our review is thus limited to consideration of whether there is substantial evidence to sustain the verdict, and we will view the evidence in the light most favorable to the verdict. *Farmers Co-op. Elevator of Cavalier v. Lemier,* 328 N.W. 2d 833, 835 (N.D.1982).

There was much conflicting evidence regarding the cause of the accident in this case, and of Butz and Werner's conduct. We will not invade the province of the jury to weigh evidence or determine the credibility of witnesses. *Farmers Co-op. Elevator, supra,* 328 N.W.2d at 835. We conclude that there is substantial evidence to support the jury's assessment of percentages of fault.[5]

## VI. PRESUMPTION THAT WARNING WOULD BE HEEDED

Cass and World assert that the trial court erred in instructing the jury that it is presumed that had adequate warnings been given they would have been read and heeded. Cass and World argue that no such presumption is recognized under North Dakota law and that, even if it were,

5. Cass and World also assert that the jury's assessment of no fault to Werner on the strict liability theory is unsupported by the evidence. As previously discussed, however, the jury's assessment is easily explained by the fact that Werner's ordinary negligence is not a defense and cannot be considered in assessing fault under the strict liability claim.

it was error to instruct the jury on the presumption.

Our strict products liability caselaw has relied heavily upon Section 402A, Restatement (Second) of Torts (1965). Comment j to Section 402A provides, in pertinent part:

"Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."

Numerous courts have relied upon Comment j in adopting a corollary presumption: that where no warning is given it may be presumed that, had an adequate warning been given, it would have been read and heeded. *See, e.g., Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1281 (5th Cir.) (applying Texas law), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974); *Nissen Trampoline Co. v. Terre Haute First National Bank,* 332 N.E.2d 820, 826–827 (Ind. Ct.App.1975), *rev'd on procedural grounds,* 265 Ind. 457, 358 N.E.2d 974 (1976); *Wooderson v. Ortho Pharmaceutical Corp.,* 235 Kan. 387, 681 P.2d 1038, 1057, *cert. denied,* 469 U.S. 965, 105 S.Ct. 365, 83 L.Ed.2d 301 (1984); *Wolfe v. Ford Motor Co.,* 6 Mass.App.Ct. 346, 376 N.E.2d 143, 147 (1978); *Seley v. G.D. Searle & Co.,* 67 Ohio St.2d 192, 423 N.E.2d 831, 838 (1981); *Technical Chemical Co. v. Jacobs,* 480 S.W.2d 602, 606 (Tex.1972). *But see Potthoff v. Alms,* 41 Colo.App. 51, 583 P.2d 309, 311 (1978). Other courts have employed the same presumption without specifically relying upon Comment j. *See, e.g., Payne v. Soft Sheen Products, Inc.,* 486 A.2d 712, 725 (D.C.1985); *Benoit v. Ryan Chevrolet,* 428 So.2d 489, 493 n. 8 (La.Ct. App.1982); *Cunningham v. Charles Pfizer & Co.,* 532 P.2d 1377, 1382 (Okla.1974); *Menard v. Newhall,* 135 Vt. 53, 373 A.2d 505, 506 (1977). *See also* 3 American Law of Products Liability 3d § 32:74, at 118 (1987).

The rationale behind this approach is that it is a logical interpretation of Comment j. If the seller is entitled to a presumption that an adequate warning will be read and heeded, the plaintiff should be entitled to the converse presumption when no warning, or an inadequate warning, is given. As noted by several courts, the presumption works in favor of the manufacturer or seller when an adequate warning is present, but in favor of the plaintiff user when no warning is given. *See, e.g., Reyes v. Wyeth Laboratories, supra,* 498 F.2d at 1281; *Nissen Trampoline Co. v. Terre Haute First National Bank, supra,* 332 N.E.2d at 826; *Seley v. G.D. Searle & Co., supra,* 423 N.E.2d at 838; *Technical Chemical Co. v. Jacobs, supra,* 480 S.W.2d at 606.

We also agree with the reasoning of the Appeals Court of Massachusetts in *Wolfe v. Ford Motor Co., supra,* 376 N.E.2d at 147:

"An adequate warning is by definition one that would in the ordinary ·course have come to the user's attention. The failure to give such a warning therefore permits the inference that it would have alerted the user to the danger and forestalled the accident."

We conclude that when no warning is given the plaintiff is entitled to the benefit of a presumption that an adequate warning, if given, would have been read and heeded.

Cass and World also assert that, even if such a presumption is applicable, the jury should not have been instructed on the presumption. Cass and World assert that the jury should simply have been instructed that Cass and World had the burden of proving that Butz would not have read nor heeded an adequate warning.

Under Rule 301(a), N.D.R.Evid., a presumption "substitutes for evidence of the existence of the fact presumed until the trier of fact finds from credible evidence that the fact presumed does not exist," and the "party against whom a presumption is directed has the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Thus, Rule 301(a) shifts the burden of proof. *Victory Park Apartments, Inc. v. Axelson,* 367 N.W.2d 155, 161 n. 4 (N.D.1985).

The trial court instructed the jury that there was a presumption that if adequate

warnings had been given Butz would have read and followed them. The court further instructed the jury regarding the effect of the presumption, and that Cass and World had the burden of proving that the nonexistence of the presumed fact was more probable than its existence.

Although the instruction suggested on appeal by Cass and World may have been a correct statement of the law, the trial court need not give instructions in the specific language requested by a litigant. Instructions which fairly inform the jury of the applicable law are all that is required. *Andrews v. O'Hearn*, 387 N.W.2d 716, 727 (N.D.1986); *Matter of Estate of Knudsen*, 342 N.W.2d 387, 392 (N.D.1984).

We conclude that the instruction, as a whole, fairly and adequately apprised the jury of the law, and we therefore find no reversible error in the instruction given by the trial court.

## VII. EXCLUSION OF VIDEOTAPE AND PHOTOGRAPHS

Cass and World assert that the trial court erred in refusing to admit into evidence a videotape and photographs of a reconstruction of the accident performed by a private investigator hired by Cass and World. Cass and World assert that the videotape and photographs would have shown the amount of "spray" from the Super Tube and its handling and arcing when towed behind a boat.

The determination whether to admit demonstrative evidence, including experiments, demonstrations, and tests, is left to the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is shown. *Van Ornum v. Otter Tail Power Co.*, 210 N.W.2d 188, 196–197 (N.D.1973). A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. *E.g., Eisenzimmer v. City of Balfour*, 352 N.W.2d 628, 631 (N.D.1984). We have reviewed the videotape and photographs in the context of this record and

we conclude that the trial court did not abuse its discretion in excluding this evidence.

## VIII. JURY INSTRUCTIONS

Cass and World assert that the trial court erred in refusing to give several other requested jury instructions. We have reviewed these proposed jury instructions and we conclude that it was not reversible error to refuse the proposed jury instructions.

## IX. CROSS APPEAL

As previously noted, Butz has filed a cross-appeal seeking a new trial on Werner's liability if a new trial is granted to Cass and World. Butz has conceded that its cross-appeal should be denied if Cass and World's appeal fails. Because we affirm the judgment based upon strict products liability against Cass and World it is unnecessary to reach the cross-appeal.

The judgment of the district court is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, J., concur.

VANDE WALLE, Justice, concurring specially.

I concur in the majority opinion.

I write separately in response to the dissenting opinion which concludes we should overrule *Mauch v. Manufacturers Sales & Service, Inc.*, 345 N.W.2d 338 (N.D.1984). Were we so faint of heart as to capitulate each time a question of jury confusion arises it is probable that we either would have no tort law because the requirement of proximate cause is too difficult to explain,[1] and for the jury to understand, or we would have liability for negligence without the necessity of proximate cause for the same reason. Indeed, because, as the dissent concedes, there is a distinction to be drawn between a negligent failure to warn and a strict-liability failure to warn, a conclusion that the jury should not be instructed, and thus not able to consider, both

---

1. See, e.g., the dissent in *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 276 (Minn.1984) [convinced jury misunderstood instruction on causation].

theories, not only inhibits the growth of the law but it is elitist and denigrates the competence of the jurors. We should not promote a philosophy that only judges are capable of determining "difficult" issues.

I do not intend to engage in a battle of citations. It is sufficient to note that there are decisions which appear to justify all positions. Because the products-liability law has exploded on the scene in the last two decades, it should come as no surprise that there is considerable disarray among the various jurisdictions on this and other issues involved in that rapidly developing field of law. The California Supreme Court explained the problem this way:

> "Part of the problem, of course, is that over the years a considerable body of law has been developed as to negligence permitting definitive instructions based upon tested and settled principles; whereas the same development has not as yet occurred with respect to the more recent doctrine of strict liability in tort." *Jiminez v. Sears, Roebuck & Company,* 4 Cal.3d 379, 93 Cal.Rptr. 769, 482 P.2d 681, 684 (1971).

The position of our court as set forth in *Mauch* is supported by citations therein to other jurisdictions, which will not be repeated here. There are more since that opinion was issued. Other jurisdictions simply refuse to recognize a strict-liability cause of action arising from allegations of inadequate warning, holding that any torts arising from a failure to warn are, in essence, negligent acts. E.g., *Hardiman v. Zep Mfg. Co.,* 14 Ohio App.3d 222, 470 N.E.2d 941 (1984). Yet other jurisdictions have chosen what appears to be a middle ground embraced by, for example, the Minnesota Supreme Court in cases the dissent finds persuasive. Thus in *Hauenstein v. Loctite Corp.,* 347 N.W.2d 272, 275 (Minn.1984), the Minnesota Supreme Court

concluded that the jury's finding that Loctite was negligent could not be reconciled with its finding that the product was not defective and, without further rationale, stated:

> "Inherent in this case is the problem of mixing ordinary negligence and strict liability where the only basis for liability is failure to warn. To avoid this problem in the future, we hold that hereafter, where a plaintiff seeks damages for both negligence and strict liability based solely upon failure to warn, the plaintiff may submit the case to the jury on only one theory. The plaintiff can plead and prove at trial either or both theories, but by the time the parties rest, the plaintiff must announce whether the case will be submitted to the jury on negligence or strict liability."

So, too, the special concurrence in *Bilotta v. Kelley Co., Inc.,* 346 N.W.2d 616, 623 (Minn.1984), arrives at that conclusion citing as its only authority a law-review article, *The Anatomy of Products Liability in Minnesota: The Theories of Recovery,* 6 Wm. Mitchell L.Rev. 1 (1980).[2] The dissent in *Holm v. Sponco Mfg., Inc.,* 324 N.W.2d 207, 213 (Minn.1982), also concludes that although "fine distinctions" can be made between the various theories, they are of little help to the trial bench. But help to the trial bench cannot be the only standard or even the most important one.

Some courts have concluded that a strict-liability theory is more favorable to protect plaintiff's rights and refused to instruct on a negligence theory. E.g., *Randall v. Warnaco, Inc., Hirsch–Weis Div.,* 677 F.2d 1226 (8th Cir.1982) [District Court decision refusing to instruct on negligence theory because it would only confuse jurors and strict liability was a more favorable theory to protect plaintiff's rights reversed applying North Dakota law].[3]

**2.** Other writers have reached a contrary conclusion. See, e.g., Prosser, *Strict Liability to the Consumer in California,* 18 Hastings L.J. 9, 50–58.

**3.** A common thread running through the cases which hold that the action should be submitted to the jury on only one theory is that the strict-liability theory, although explained in negli-

gence terms, nearly always will be broad enough to encompass all plaintiff's right to recovery. But that is not always true. See, e.g., *Jiminez v. Sears, Roebuck & Company,* 4 Cal.3d 379, 93 Cal.Rptr. 769, 482 P.2d 681 (1971) [in many cases plaintiff might well be benefited by resort to settled negligence principles and approved jury instructions].

I agree with those jurisdictions which hold that there is no valid reason to require a plaintiff to elect whether to proceed on the theory of strict liability in tort or on the theory of negligence. E.g., *Jiminez v. Sears, Roebuck & Company, supra.* The position is set forth succinctly in a failure-to-warn case in *Ilosky v. Michelin Tire Corp.*, 307 S.E.2d 603, 613 (W.Va.1983):

"Product liability actions may be premised on three independent theories— strict liability, negligence, and warranty. Each theory contains different elements which plaintiffs must prove in order to recover. No rational reason exists to require plaintiffs in product liability actions to elect which theory to submit to the jury after the evidence has been presented when they may elect to bring suit on one or all of the theories.

. . . . .

"The appellant proposes that we restrain the common law development of the strict liability cause of action.

. . . . .

". . . To permit plaintiffs to plead alternative causes of action, but to force them to choose one theory to submit to the jury after the taking of evidence would force some plaintiffs to forego the strict liability cause of action if they believed they had stronger negligence or warranty cases. We decline to adopt this view of the law."

Without repeating the *Mauch* analysis of the distinctions between strict-liability and negligence theories, I note that at least one court has observed that in a strict-liability case the plaintiff need not prove the scienter of the defendant, i.e., that he knew of or should have known of the harmful characteristics of the product without a warning. *Lancaster Silo & Block v. Northern Propane Gas*, 75 A.D.2d 55, 427 N.Y.S.2d 1009, 1015 (1980). See also *Jiminez, supra* [in strict liability need not prove defect in product due to negligence of defendant].

It is conceivable that the plaintiff may desire instructions on both theories in order to argue to the jury those unreasonable acts of the defendant which the plaintiff believes prove the negligence theory and further to argue that if the jury determines those acts not unreasonable, and thus not negligent, it should turn its focus from those acts to the product and the danger it poses to the public. The theories are alternative and permit the plaintiff to argue to the jury a second choice, not entirely unlike the opportunity provided by a lesser-included-offense instruction in a criminal case. I do not believe the plaintiff should be denied that right because of the possibility of jury confusion. The plaintiff has as much to risk as the defendant if the jury is confused. The plaintiff should retain the right to present all theories to the jury for which there is support in the evidence.

I do not so quickly despair, as does the dissent, of our holding in *Mauch*. The cases cited to prove the problem do not justify so rapid and abrupt a discard of the *Mauch* holding. *Hoerr v. Northfield Foundry and Mach. Co.*, 376 N.W.2d 323 (N.D.1985), while it involved an issue of alleged inconsistent verdict, which was easily disposed of, was most difficult because of the statutorily immune tortfeasor and the settlement by the plaintiff with yet other tortfeasors. *Hoerr, supra*, at 335 (VandeWalle, J., concurring in part and dissenting in part).

Nor do I believe the instant case proves the problem. We have had other cases of inconsistent verdicts and we have not suggested we abandon a theory of the law simply because of them. In some instances the inconsistencies are the result of the problem in correctly instructing the jury; in other instances the problems appear to be the result not of the difficulty of the law but the preparation of the special verdict form by the trial attorneys and the court. As the use of special verdict forms becomes more popular, and their use has increased greatly in recent years, we can on appeal expect even more allegations of inconsistent answers to the special interrogatories. E.g., *Massey–Ferguson Credit Corp. v. Orr*, 420 N.W.2d 1 (N.D.1988). Presumably we will not abandon the theory of the law because of those challenges nor will we recommend the abandonment of the special interrogatories, although there are

times when they may appear to be overly complicated.

Finally, I question what dichotomy the dissent would create between those cases in which theories of negligence and strict liability are alleged, and in support of which evidence is introduced, but the plaintiff must choose one or the other before submission to the jury, and those cases in which the same theories are alleged and evidence submitted but the case is tried to the court rather than to a jury. Are we to assume that the plaintiff must also choose one theory or the other before the court takes the case under submission lest the trial court, too, become confused? I assume not. But will we, on appeal, require findings of fact and conclusions of law which dispose of each theory individually? It is a rare case in which a plaintiff entitled to a jury trial is denied the right to present all the recognizable theories to the jury but is permitted to submit those same theories to the court sitting without a jury. If the dissent were to prevail, the fateful decision to be made by the plaintiff may not be upon which theory the case should be presented to the jury but rather whether it should be presented to the jury at all. If the plaintiff determines to not demand a jury trial in order to preserve the right to have both theories of the case considered individually by the trial court, will not the defense demand a jury trial in order that the plaintiff will be forced to select one theory or the other before submission to the trier of fact? These are issues which arise when an attempt is made to disrupt the orderly development of the law. Conceding there are difficulties in properly instructing the jury on the various theories, I nevertheless believe the cure suggested by the dissent may be worse than the disease. As the old saw states, "The cure was a success but the patient died."

It is too early to halt the development of the law in this field as the dissent would have us do. The law should be permitted to take its normal course and the plaintiff should be permitted to submit to the jury all accepted theories which a plaintiff entitled to a jury trial is entitled to plead and prove.

LEVINE, Justice, dissenting.

In *Mauch v. Manufacturer's Sales & Service, Inc.,* 345 N.W.2d 338 (N.D.1984), a key issue was the trial court's refusal to give a requested instruction on strict liability failure to warn in addition to its instruction on negligent failure to warn. The trial court viewed the two as indistinguishable and decided that instructing on both would serve only to confuse the jury. This court reversed, holding that there was a difference between a negligent failure to warn and a strict liability failure to warn and that a strict liability instruction should have been given. So far, so good. Unfortunately, this court also held that not only a strict liability instruction, but also, a negligence instruction must be given in failure-to-warn cases. That was unfortunate in my view and it is that aspect of *Mauch*—that both instructions should be given, that I think is untenable and should be overruled.

While conceding that the distinction to be drawn between a negligent failure to warn and a strict liability failure to warn "might seem illusive," we fatefully decided to enshrine that illusiveness only because under strict tort doctrine, "the emphasis is on the product," while under negligence, "the emphasis is on the reasonableness of the conduct of the manufacturer." *Id.* at 346. For this theoretical justification, we relied on Frumer and Friedman, Products Liability § 16A[4][f] at 3B–156 (1983).

In my view, Frumer and Friedman's rationale is not compelling because it fails to incorporate the reality that negligence and strict liability overlap on the issue of duty to warn. *Hauenstein & Loctite Corp.,* 347 N.W.2d 272 (Minn.1984); *see Bilotta v. Kelley Co., Inc.,* 346 N.W.2d 616, 623 (Minn.1984); *see also Holm v. Sponco Manufacturing, Inc.,* 324 N.W.2d 207, 214–15 (Minn.1982) (Simonett, J., dissenting). Their rationale is not pragmatic.[1]

1. Webster's Third New International Dictionary (1971) defines pragmatism as "emphasis in phil- osophical thought on the application of ideas or the practical bearings of conceptions and be-

While strict liability, as a general proposition, may be characterized as focusing on the product, that is, whether the product is unreasonably dangerous and defective, rather than on the conduct of the manufacturer, the duty to warn case necessarily implicates a manufacturer's conduct over and above the dangerousness of the product because it is the manufacturer's conduct of failing to prepare an adequate warning, that renders the product dangerous. *Bilotta v. Kelley Co., Inc., supra; Nigh v. Dow Chemical Co.,* 634 F.Supp. 1513 (W.D.Wis.1986); *see also Smith v. E.R. Squibb & Sons, Inc.,* 405 Mich. 79, 273 N.W.2d 476 (1979). Dean Keeton puts it differently:

> "[A] product is unreasonably dangerous at the time of sale if the ordinary man (*sic*), knowing the risks and dangers actually involved in its use, would not have marketed the product without supplying more information about the risks and dangers involved in its use and ways to avoid harm therefrom." Keeton, Products Liability—Inadequacy of Information, 48 Tex.L.Rev. 398, 403–04 (1970).

Thus, some sort of "reasonable person" standard inheres in the issue of a failure to warn and even if that reasonable person or "ordinary man" is not the defendant, but the ideal manufacturer who knows the risks of distributing the product without a warning, the concept of "reasonable person" or "ordinary man" looks, sounds and smells like that traditional negligence concept. Indeed, in duty-to-warn cases, the emphasis upon the nature and scope of the warning has led to a convergence of the functional identities of strict liability and negligence. Kidwell, The Duty to Warn: A Description of the Model of Decision, 53 Tex.L.Rev. 1375, 1378 (1975).

Whether or not this court was theoretically correct in distinguishing between strict liability and negligent failure to warn because of the differing emphasis of each, I sympathize with the frustration of the trial judge in *Nigh v. Dow Chemical Co., supra* at 1517:

> "The Court will leave the task of distinguishing between negligence and strict liability in the duty to warn to those who count angels on the heads of pins."

It cannot be seriously questioned that in practice it is difficult to distinguish between the strict liability duty to warn and the negligence duty to warn not only because a manufacturer's duty to warn is defined in terms of reasonableness (*Hauenstein v. Loctite Corp., supra*), but also because there lurks within strict liability the familiar negligence element of foreseeability that a product will be unreasonably dangerous in its foreseeable use by foreseeable users without a warning. *Id., see Gracyalny v. Westinghouse Electric Corp.,* 723 F.2d 1311 (7 Cir.1983) (applying Wisconsin law). The genius of the law is its melding of theory and practice. If, in practice, the application of theory to the facts creates contradictory verdicts, complicated verdict forms with divergent defenses for each theory, and tortuous instructions, any of which would challenge the intellectual prowess of tort professors, let alone lawyers, judges and juries, I say we should take our lead from that movie hero of a few years ago and at least figuratively shriek through open windows: We've had enough.

*Mauch* may merit an A on a tort exam. One may even agree with its theoretical syllogism. However, *Mauch* has failed in the courtroom. *See e.g., Hoerr v. Northfield Foundry and Machine Co.,* 376 N.W. 2d 323 (N.D.1985), and the majority opinion in this case.

Stare decisis is a policy grounded on the theory that when a legal principle is established, "rights may accrue under it and security and certainty require that the principle be recognized and followed thereafter even though it later be found to be not legally sound." *Otter Tail Power Co. v. Von Bank,* 72 N.D. 497, 8 N.W.2d 599, 607

liefs; an American movement in philosophy founded by Peirce and James and marked by the doctrines that the meaning of conceptions is to be sought in their practical bearings, that the function of thought is as a guide to action, and that the truth is preeminently to be tested by the practical consequences of belief."

(on petition for rehearing) (1942). However, the rule is not "sacrosanct." *Id.; see also State v. Cummings*, 386 N.W.2d 468 (N.D.1986). While Justice Blackmun cautioned, in overruling *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), that "We do not lightly overrule recent precedent," *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 557, 105 S.Ct. 1005, 1020, 83 L.Ed.2d 1016 (1985), he proceeded to do exactly that.

I would embrace the Minnesota Supreme Court's example of merging strict liability and negligence in cases of failure to warn. *Hauenstein v. Loctite Corp., supra; see Bilotta v. Kelley Co., Inc., supra; Kallio v. Ford Motor Co.*, 407 N.W.2d 92 (Minn. 1987). *See generally* Steenson, Products Liability Law in Minnesota: Design Defect and Failure to Warn Cases, 14 Wm. Mitchell L.Rev. 443 (1988). In particular, I am persuaded by Justice Simonett's special concurrence in *Bilotta v. Kelley Co., supra* at 625–27. He concludes that the distinction between strict liability and negligence may be significant to the trial court in deciding whether the case goes to the jury, "but once the case is submitted, insofar as the jury is concerned, any distinction between strict liability and negligence is nonexistent where the claim is for design defect or failure to warn...." (Citation omitted.)

Justice Simonett suggests that to avoid the risk of perverse verdicts, the issue of failure to warn should be removed from any strict liability defective condition instruction and be submitted as a separate negligence issue. *Bilotta*, 346 N.W.2d at 626 n. 1. I would agree with this sugges-

tion or with the rule that plaintiff may elect to submit to the jury in a failure-to-warn case either a strict liability or negligence theory, whichever, under the facts of the particular case, will be more productive from the plaintiff's perspective. That follows the Minnesota Supreme Court's holding in *Hauenstein v. Loctite Corp., supra* at 275[2] and that is the direction I would like to see our court take in order to clear the thicket in which we find ourselves and from which trial courts must disentangle themselves in all failure-to-warn cases.

*Mauch* has led us to the intractable dilemma exposed on page 515 of the majority opinion regarding the impossibility to combine strict liability and negligence into a single verdict form to simplify and, indeed, to make comprehensible, the law to the jury. The majority concludes that "there is no logical method to combine fault assessment under the two theories without effectively blending them to the point of destroying their functions as separate theories of recovery." I commend to the majority Justice Holmes' caveat that the life of the law is not logic, but experience. Based upon experience (*see Andersen v. Teamsters Local 116 Building Club, Inc.*, 347 N.W.2d 309 (N.D.1984); *Hoerr v. Northfield Foundry & Machine Co., supra*), I do not place the same value as does the majority in preserving these separate theories of recovery for the sake of logic. Apparently, neither does the legislature. *See* NDCC § 32–03.2–01. I do see great value in presenting to the jury the issue of failure to warn in a manner that deemphasizes doctrinal labels, obviates confusion and is comprehensible, consistent and conducive to rendering justice.

2. In *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 275 (Minn.1984), the Minnesota Supreme Court held:

"We hold that a manufacturer's duty to warn in strict liability cases extends to all reasonably foreseeable users. We therefore conclude that the jury's finding that Loctite was negligent cannot be reconciled with its finding that the product was not defective. Inherent in this case is the problem of mixing ordinary negligence and strict liability where the only basis for liability is failure to warn. To avoid this problem in the future, we hold that hereafter, where a plaintiff seeks dam-

ages for both negligence and strict liability based solely upon failure to warn, the plaintiff may submit the case to the jury on only one theory. The plaintiff can plead and prove at trial either or both theories, but by the time the parties rest, the plaintiff must announce whether the case will be submitted to the jury on negligence or strict liability."

*See also Germann v. F.L. Smithe Machine Co.*, 395 N.W.2d 922, 926 n. 4 (Minn.1986) where the court announced that it "has adopted the position that strict liability for failure to warn is based upon principles of negligence."

I would reverse and remand for a new trial. I therefore respectfully dissent.

MESCHKE, J., concurs.